1

**GIRARD SHARP LLP**
Dena C. Sharp (State Bar No. 245869)
Adam E. Polk (State Bar No. 273000)
Nina R. Gliozzo (State Bar No. 333569)
Patrick T. Johnson (State Bar No. 329580)
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: dsharp@girardsharp.com
Email: apolk@girardsharp.com
Email: ngliozzo@girardsharp.com
Email: pjohnson@girardsharp.com

*Counsel for Plaintiffs and the Proposed Class*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| F.G. and H.I., T.U. and V.W., individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>COOPERSURGICAL, INC.; THE COOPER COMPANIES, INC.; and DOES 1-10, inclusive,<br><br>　　　　　Defendants. | Case No. 4:24-cv-01261-JST<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS COOPERSURGICAL, INC. AND THE COOPER COMPANIES, INC.'S MOTION TO STRIKE PLAINTIFFS' CLASS ALLEGATIONS IN THE FIRST AMENDED COMPLAINT**<br><br>Date:　　September 12, 2024<br>Time:　　2:00 p.m.<br>Courtroom 4 – 3rd Floor<br><br>Hon. Jon S. Tigar |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ............................................................................................................. 1

II.    STATEMENT OF FACTS .............................................................................................. 2

III.   LEGAL STANDARD ..................................................................................................... 3

IV.    ARGUMENT .................................................................................................................. 4

    A.    The Motion to Strike is Inappropriate Under Rule 12(f) ..................................... 4

    B.    The Court Should Not Strike Plaintiffs' Class Allegations ................................. 5

        1.    Plaintiffs' Class Allegations are Amenable to Rule 23 Certification ................. 5

        2.    Defendants' Rule 23(b)(3) Arguments are Flawed. ............................................ 6

            a.    Predominance ............................................................................................... 6

            b.    Superiority .................................................................................................... 7

    C.    Defendants Rule 23(b)(1) and 23(b)(2) Arguments are Misplaced ............................. 10

    D.    Defendants' Rule 23(c)(4) Arguments Also Miss the Mark .......................................... 10

    E.    Defendants' Rule 23(d)(1)(D) Motion Should be Denied ............................................. 14

V.     CONCLUSION ............................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Amador v. Baca*,
   2016 WL 8904537 (C.D. Cal. Nov. 18, 2016) ........................................................................ 10

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................................................. 6

*Astiana v. Ben & Jerry's Homemade, Inc.*,
   2011 WL 2111796 (N.D. Cal. May 26, 2011) ...................................................................... 1, 3

*Boyd v. Bank of Am. Corp.*,
   300 F.R.D. 431 (C.D. Cal. 2014) ............................................................................................ 8

*Bryant v. Food Lion, Inc.*,
   774 F. Supp. 1484 (D.S.C. 1991) ............................................................................................ 4

*Cheatham v. ADT Corp.*,
   161 F. Supp. 3d 815 (D. Ariz. 2016) ....................................................................................... 4

*Erceg v. LendingClub Corp.*,
   475 F. Supp. 3d 1071 (N.D. Cal. 2020) ................................................................................... 4

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
   2015 WL 4776932 (C.D. Cal. May 27, 2015) ......................................................................... 8

*Frenzel v. AliphCom*,
   76 F. Supp. 3d 999 (N.D. Cal. 2014) ................................................................................... 5, 7

*Gatling-Lee v. Del Monte Foods, Inc.*,
   2023 WL 11113888 (N.D. Cal. Mar. 28, 2023), *recons. denied sub nom. Nacarino v. Del
   Monte Foods, Inc.*, No. 22-CV-00892-JST, 2024 WL 847925 (N.D. Cal. Feb. 28, 2024) ............... 3

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ............................................................................................... 6, 7

*In re Nassau Cty. Strip Search Cases*,
   461 F.3d 219 (2d Cir. 2006) .................................................................................................. 10

*In re Pacific Fertility Center Litig.*,
   2020 WL 3432689 (N.D. Cal. June 23, 2020) .................................................................... 12, 13

*In re Telectronics Pacing Sys., Inc.*,
   172 F.R.D. 271 (S.D. Ohio 1997) ............................................................................................ 6

*In re Tri-State Crematory Litigation*,
   215 F.R.D. 660 (N.D. Ga. 2003) ....................................................................................... 11, 12

*In re Wal–Mart Stores, Inc. Wage and Hour Litig.*,
   505 F. Supp. 2d 609 (N.D. Cal. 2007) ..................................................................................... 3

*Jimenez v. Allstate Ins. Co.*,
   765 F.3d 1161 (9th Cir. 2014) ............................................................................................... 10

*Kamakahi v. Am. Soc'y for Reprod. Med.*,
  305 F.R.D. 164 (N.D. Cal. 2015) ................................................................................. 10

*Law v. City of Berkeley*,
  2016 WL 4191645 (N.D. Cal. Aug. 9, 2016) .......................................................... 3, 5

*Lilly v. Jamba Juice Co.*,
  308 F.R.D. 231 (N.D. Cal. 2014) ................................................................................. 11

*Lyons v. Bank of Am., NA*,
  2011 WL 6303390 (N.D. Cal. Dec. 16, 2011) ........................................................... 14

*Martin v. Behr Dayton Thermal Prod. LLC*,
  896 F.3d 405 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 1319 (2019) ........................ 10

*Navelski v. Int'l Paper Co.*,
  244 F. Supp. 3d 1275 (N.D. Fla. 2017) ...................................................................... 11

*Olden v. LaFarge Corp.*,
  383 F.3d 495 (6th Cir. 2004) ....................................................................................... 13

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) .......................................................................................... 4

*Petersen v. Costco Wholesale Co.*,
  312 F.R.D. 565 (C.D. Cal. 2016) ................................................................................. 11

*Reniger v. Hyundai Motor Am.*,
  122 F. Supp. 3d 888 (N.D. Cal. 2015) ....................................................................... 4, 5

*Roberts v. Wyndham Int'l, Inc.*,
  2012 WL 6001459 (N.D. Cal. Nov. 30, 2012) ........................................................... 14

*Rodriguez v. Belfor USA Grp., Inc.*,
  2022 WL 1814257 (N.D. Cal. June 2, 2022) ................................................................ 5

*Slocum v. Int'l Paper Co.*,
  2019 WL 2192099 (E.D. La. May 21, 2019) ......................................................... 11, 13

*Sterling v. Velsicol Chem. Corp.*,
  855 F.2d 1188 (6th Cir. 1988) ....................................................................................... 6

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
  2014 WL 1048710 (N.D. Cal. Mar. 14, 2014) ............................................................. 3

*Todd v. Tempur-Sealy Int'l, Inc.*,
  2016 WL 344479 (N.D. Cal. Jan. 28, 2016) ............................................................. 5, 7

*Torres v. Mercer Canyons, Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ....................................................................................... 7

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) ............................................................................................... 7, 11

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) ................................................................................ 5, 8, 10

*Vinole v. Countrywide Home Loans, Inc.*,
  571 F.3d 935 (9th Cir. 2009) .................................................................................... 4

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................................... 4

*Wang v. Chinese Daily News, Inc.*,
  737 F.3d 538 (9th Cir. 2013) .................................................................................... 2

*Whittlestone, Inc. v. Handi–Craft Co.*,
  618 F.3d 970 (9th Cir. 2010) ............................................................................ 1, 3, 5

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) .................................................................................. 7

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001), *op. am. on denial of reh'g,* 273 F.3d 1266 (9th Cir. 2001) .......... 7, 9

*Zinser, Haley v. Medtronic, Inc.*,
  169 F.R.D. 643 (N.D. Cal. 1996) .............................................................................. 9

**Other Authorities**

7AA Charles Alan Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure
  Civil § 1785.3 (3d. 2005) .......................................................................................... 3

William B. Rubenstein, *Newberg on Class Actions* § 4:67 (5th ed. 2014) .......................... 8

Wright & Miller, Federal Practice and Procedure § 1781 (3d ed.) .................................... 8

**Rules**

Fed R. Civ. P. 23(c)(4)(A) ............................................................................................ 11

Fed. R. Civ. P. 12(f) ................................................................................ 1, 3, 4, 5, 14, 15

Fed. R. Civ. P. 23 ......................................................................................................... 1

Fed. R. Civ. P. 23(b)(1) ........................................................................................ 10, 15

Fed. R. Civ. P. 23(b)(2) ........................................................................................ 10, 15

Fed. R. Civ. P. 23(b)(3) .................................................................... 2, 4, 6, 8, 10, 11

Fed. R. Civ. P. 23(c)(4) ........................................................... 4, 9, 10, 12, 13, 14

Fed. R. Civ. P. 23(d)(1)(D) ................................................................................. 1, 14

1    I.    **INTRODUCTION**

2         In this class action, F.G., H.I., T.U., and V.W. ("Plaintiffs") allege that Defendants

3    CooperSurgical, Inc. and The Cooper Companies, Inc. ("CooperSurgical" or "Defendants") negligently

4    designed, manufactured, marketed, and sold a defective product, the "global culture media," which is

5    used in vitro fertilization ("IVF") to stimulate embryo growth. Plaintiffs allege that the culture media,

6    was uniformly defective, and damaged all embryos that came into contact with it, such that would-be

7    families across the country lost some or all of the embryos exposed to the defective medium. Only after

8    Plaintiffs and patients around the country lost their embryos did Defendants recall the product. Because

9    of the uniform nature of the defect, and the common exposure of Plaintiffs' embryos to it, Plaintiffs

10   filed this action on their own behalf, and on behalf of similarly affected households, seeking damages,

11   and to efficiently resolve common issues.

12        Defendants move to strike Plaintiffs' class allegations under Rule 12(f) and 23(d)(1)(D) on the

13   grounds that Plaintiffs' claims are, as a matter of law, not amenable to certification under Rule 23. Mot.

14   at 17. Although acknowledging that motions to strike class allegations at the pleadings stage are rarely

15   granted, and conceding that there is not a per se bar to product liability class actions, Defendants submit

16   that this case will never be certifiable under Rule 23, no matter what discovery uncovers and no matter

17   how the case evolves.

18        The Court should deny the motion. First, the motion is improper because Defendants do not

19   argue that Plaintiffs' class claims are "part of an insufficient defense, redundant, immaterial,

20   impertinent, or scandalous," as they must under *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970,

21   973 (9th Cir. 2010).[1] Second, even if the Court finds the motion is proper, Defendants fall short of

22   meeting their burden of showing that this case is one of the "exceedingly rare" instances where striking

23   class allegations is merited. Plaintiffs' injuries arise from a single defect in one product in four lots used

24   between October and December of 2023. This single defect and single course of conduct is identical for

25   each Plaintiff, making a class "sufficiently cohesive to warrant adjudication by representation." *Wang*

26   _____

27   [1] Courts in this District have increasingly denied motions to strike class claims for failure to connect the
     motion to one of *Whittlestone*'s five alternatives. *See, e.g.*, *Astiana v. Ben & Jerry's Homemade, Inc.*,
28   2011 WL 2111796, *15 (N.D. Cal. May 26, 2011).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' CLASS
ALLEGATIONS IN THE FIRST AMENDED COMPLAINT
CASE NO. 4:24-cv-01261-JST

1

1  *v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013), ("The predominance analysis under

2  Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case and

3  tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.")

4  (internal citation and quotations omitted). This single course of conduct distinguishes this case from the

5  out of circuit authorities Defendants identify. And, notably, Defendants did not cite to a single case

6  from this Circuit that struck product liability class claims at the pleading stage. Nor are Plaintiffs aware

7  of one.

8       Plaintiffs request the Court deny the motion.

9  **II.**    <u>**STATEMENT OF FACTS**</u>

10       Plaintiffs are two married couples who sought fertility treatment at fertility clinics in New York

11  (F.G. and H.I.) and California (T.U. and V.W), each undergoing the invasive, expensive, and

12  emotionally taxing process of IVF in the hopes of having biological children. Consol. Am. Compl.

13  (Dkt. 53) ¶¶ 4–5, 24–40 (describing the invasive procedures and emotional impact generally involved

14  in IVF). The process takes months (sometimes years) and costs between \$40,000–\$60,000 out of

15  pocket. *Id.* ¶ 31. It requires multiple doctor visits involving blood tests, invasive transvaginal ultrasound

16  examinations, and anesthetized surgery to retrieve eggs. *Id.* ¶¶ 28–29. Clinicians place IVF-fertilized

17  eggs in a specially created liquid called culture media, which is designed to replicate the conditions of a

18  woman's body and support the healthy development of embryos. *Id.* ¶¶ 2, 49. Relevant here, a key

19  ingredient in culture media and embryonic development is magnesium. *Id.* ¶ 50.

20       Defendants manufacture, market, and sell culture media to fertility clinics. *Id.* ¶ 2. In December

21  2023, Defendants recalled certain lots of its culture media products after learning they were magnesium

22  deficient and could harm or destroy embryos. *Id.* ¶¶ 3, 56. Tragically, clinics across the country had

23  already placed patients' embryos in Defendants' defective culture media. *Id.* ¶¶ 3, 6. The magnesium

24  starved culture media destroyed the embryos, including all four of F.G. and H.I.'s embryos and all six

25  of T.U. and V.W.'s embryos. *Id.* ¶¶ 7–8.

26       On March 1, 2024, Plaintiffs filed a proposed class action complaint against Defendants on

27  behalf of themselves and all patients affected by Defendants' defective products. Plaintiffs allege seven

28  claims: strict product liability under manufacturing defects, design defects, and failure to warn;

---

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' CLASS
ALLEGATIONS IN THE FIRST AMENDED COMPLAINT
CASE NO. 4:24-cv-01261-JST

1   negligent failure to recall; negligence and/or gross negligence; trespass to chattels; and unjust

2   enrichment. *Id.* at 1. Starting in December 2023, similarly situated plaintiffs began filing individual

3   complaints related to the recalled culture media. *See, e.g.*, *A.B. v. CooperSurgical, Inc.*, 23-st-cv-30523

4   (Cal. Sup. Ct.). In this District alone, there are at least thirty-two individual complaints alleging

5   substantially identical claims, and at least three more in other courts.

6   ## III.   LEGAL STANDARD

7       Rule 12(f) permits the court to strike "redundant, immaterial, impertinent, or scandalous matter."

8   Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and

9   money that must arise from litigating spurious issues by dispensing with those issues prior to trial

10  ...." *Whittlestone,* 618 F.3d at 973. The court must determine whether the matter the moving party seeks

11  to have stricken is (1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5)

12  scandalous. *Id.* at 973–74.

13      Following the Ninth Circuit's decision in *Whittlestone*, courts in this District have increasingly

14  declined to entertain motions to strike class allegations unless the movant shows that the allegations "are

15  either part of an insufficient defense, or are redundant, immaterial, impertinent, or scandalous." *Astiana*,

16  2011 WL 2111796 at *15. If they are not scandalous, redundant, immaterial, or part of an insufficient

17  defense, then Rule 12(f) is "not the proper vehicle for seeking dismissal of class allegations." *Tasion*

18  *Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 2014 WL 1048710 (N.D. Cal. Mar. 14, 2014).

19      In the event courts do consider a motion to strike class allegations at the pleading stage,

20  they "apply a very strict standard: only if the court is convinced that any questions or law are clear and

21  not in dispute, and that under no set of circumstances could the claim or defense succeed may the

22  allegations be stricken." *Law*, 2016 WL 4191645 at *3 (cleaned up). Such motions are "rarely" granted

23  because "the better course is to deny such a motion because the shape and form of a class action evolves

24  only through the process of discovery." *Gatling-Lee v. Del Monte Foods, Inc.*, No. 22-CV-00892-JST,

25  2023 WL 11113888 (N.D. Cal. Mar. 28, 2023) (citing *In re Wal–Mart Stores, Inc. Wage and Hour*

26  *Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) and 7AA Charles Alan Wright, Arthur R. Miller &

27  Mary K. Kane, Federal Practice and Procedure Civil § 1785.3 (3d. 2005) (overwhelming majority of

28  class actions address class certification issues only after an appropriate period of discovery), *recons.*

1  *denied sub nom. Nacarino v. Del Monte Foods, Inc.*, No. 22-CV-00892-JST, 2024 WL 847925 (N.D.

2  Cal. Feb. 28, 2024)); *see also Reniger v. Hyundai Motor Am.*, 122 F. Supp. 3d 888, 908 (N.D. Cal.

3  2015) ("absent exceptional circumstances," motions to strike at pleading stage are not granted).

4       Under Supreme Court precedent, courts must conduct a "rigorous analysis" supported by

5  evidence at class certification to determine whether Rule 23's requirements have been satisfied. *Wal-*

6  *Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 352 (2011); *see Olean Wholesale Grocery Coop., Inc. v.*

7  *Bumble Bee Foods LLC*, 31 F.4th 651, 667 (9th Cir. 2022) (noting "the court must make a rigorous

8  assessment of the available evidence and the method or methods by which plaintiffs propose to use the

9  [class-wide] evidence to prove the common question in one stroke") (cleaned up). The Ninth Circuit has

10  therefore recognized that "the better and more advisable practice . . . is to afford the litigants an

11  opportunity to present evidence as to whether a class action [i]s maintainable." *Vinole v. Countrywide*

12  *Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) (internal citations and quotation marks omitted).

13  "[E]ven a purely legal question will not be decided on a motion to strike if discovery might provide

14  useful context for decision or render the question moot." *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815

15  (D. Ariz. 2016).

16       When, as here, a defendant moves to strike or dismiss class allegations before plaintiffs have

17  completed discovery, the defendant has "the burden of demonstrating from the face of plaintiffs'

18  complaint that it will be impossible to certify the classes alleged by the plaintiffs regardless of the facts

19  the plaintiffs may be able to prove." *Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484, 1495 (D.S.C. 1991);

20  *see also Erceg v. LendingClub Corp.*, 475 F. Supp. 3d 1071, 1079 (N.D. Cal. 2020) ("LendingClub has

21  not carried its burden  to show that this is one of the rare cases in which class allegations should be

22  stricken prior to certification.").

23  **IV.   <u>ARGUMENT</u>**

24       The Court should deny Defendants' motion because it does not meet the standard under Rule

25  12(f) and Plaintiffs' claims are amenable to class treatment under either Rule 23(b)(3) or 23(c)(4).

26       **A.   The Motion to Strike is Inappropriate Under Rule 12(f)**

27       Defendants' assertion that Plaintiffs' class allegations are fatally flawed and the Court cannot

28  certify the proposed class as a matter of law is wrong on multiple levels. As an initial matter,

1  Defendants' motion does not meet the standard for a motion to strike under Rule 12(f) because they do

2  not argue that the contested allegations "are either part of an insufficient defense, or are redundant,

3  immaterial, impertinent, or scandalous." *Whittlestone*, 618 F.3d at 973; *Law v. City of Berkeley*, 2016

4  WL 4191645, at *2 (N.D. Cal. Aug. 9, 2016) ("Defendants have not cited, and the Court is not aware,

5  of any Ninth Circuit Court of Appeals case concluding that Rule 12(f) is an appropriate vehicle for

6  resolving the propriety of class claims."); *Rodriguez v. Belfor USA Grp., Inc.*, 2022 WL 1814257, at *4

7  (N.D. Cal. June 2, 2022) ("[T]he Court questions whether Rule 12(f) is an appropriate procedural

8  vehicle for addressing defendants' concerns about the scope of Mr. Rodriguez's class allegations in

9  view of the Ninth Circuit's decision in *Whittlestone*.") (citations omitted). Because Defendants are not

10  moving to strike eligible allegations under Rule 12(f), the Court should deny the motion.

### B.   The Court Should Not Strike Plaintiffs' Class Allegations

#### 1.   Plaintiffs' Class Allegations are Amenable to Rule 23 Certification

13       In the event that the Court determines that a motion to strike is the appropriate vehicle to address

14  class allegations, Defendants have not met their "exceptional" burden of proving Plaintiffs' class

15  allegations should be stricken. *Reniger*, 122 F. Supp. 3d at 908. As Defendants admit (Mot. at 18), the

16  Ninth Circuit does not have an "absolute bar to the certification of a multi-state plaintiff class action in

17  the medical products liability context." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1230 (9th Cir.

18  1996). And Defendants do not provide a single example of a court in the Ninth Circuit striking product

19  liability class allegations at the pleading stage. They argue that individual issues will predominate

20  because choice of law rules require this Court apply the laws of dozens of states. But the Court has not

21  yet ruled on what law applies, and a choice of law analysis at this stage—prior to discovery and the

22  development of a factual record—is premature. *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1007 (N.D.

23  Cal. 2014) (choice of law analysis is a "fact-specific inquiry which requires a more developed factual

24  record than is generally available on a motion to dismiss"); *Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-

25  CV-04984-JST, 2016 WL 344479 (N.D. Cal. Jan. 28, 2016) (collecting cases). Even if different laws

26  were in play, Plaintiffs—following a period of discovery—intend to craft a manageable trial plan that

27  could resolve any individual issues that surface.

28

---

Contrary to Defendants' assertions, Plaintiffs' claims are well suited to class treatment because they arise from a single defect and a single course of conduct—the defective lots of the global culture media product distributed in October through December 2023. "[W]here the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy." *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988). The Supreme Court has reiterated that "cases arising from a common cause or disaster may, depending upon the circumstances, satisfy the predominance requirement." *Amchem Prods.*, 521 U.S. at 625. In fact, "[n]umerous courts have found that common issues predominate when a large number of lawsuits arise from a single disaster or single course of conduct." *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 288 (S.D. Ohio 1997) (citing cases).

This case is amenable to class treatment because Plaintiffs' claims all arise from Defendants' December 2023 recall of the global culture media product, to which their reproductive material was commonly exposed. That single course of conduct—one product, one recall—lends itself to a cohesive class with predominantly common issues. These issues include how the defective culture was manufactured, why Defendants' quality control methods did not catch the defect, and what effect the defective product had on the eggs and embryos that came into contact with it. The answers to all three questions are the same for each class member. The commonality of these issues, coupled with the dispersed and numerous nature of the absent class members from clinics around the country, make class treatment the superior vehicle to reach resolution.

### 2. Defendants' Rule 23(b)(3) Arguments are Flawed.

Defendants argue that Plaintiffs could never certify a Rule 23(b)(3) class for failure to show predominance or superiority. They are incorrect on both fronts.

#### a. Predominance

"The predominance inquiry under Rule 23(b)(3) 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557 (9th Cir. 2019) (en banc) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The inquiry calls for "a global determination of whether common questions prevail over individualized

1    ones. . . . [M]ore important questions apt to drive the resolution of the litigation are given more weight

2    in the predominance analysis over individualized questions which are of considerably less significance

3    to the claims of the class." *Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). Even if

4    only one common question predominates, "the action may be considered proper under Rule 23(b)(3)

5    even though other important matters will have to be tried separately.'" *In re Hyundai & Kia Fuel Econ.*

6    *Litig.*, 926 F.3d at 557 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)).

7            Defendants argue that Plaintiffs cannot show common issues predominate because choice of law

8    rules indicate require application of many states' laws. Mot. at 21. For support they rely primarily on

9    *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001), *op. am. on denial of reh'g,* 273

10   F.3d 1266 (9th Cir. 2001), which affirmed the trial court's decision to deny class certification over a

11   product liability action involving pacemakers that allegedly contained defective lead models. But *Zinser*

12   did not, as discussed above, create an absolute bar on nationwide product liability class actions. Instead,

13   the Ninth Circuit there found the trial court did not abuse its discretion in denying class certification

14   after the plaintiffs failed to present a "manageable trial plan" that addressed the different states' laws,

15   including providing representative plaintiffs for each subclass and demonstrating that each subclass

16   meets the Rule 23 requirements. *Id.* at 1190. In doing so, *Zinser* acknowledged that product liability

17   cases can be certified if the plaintiffs presents a plan "adequate to deal with individualized issues and

18   variances in state law." *Id.* (citations omitted). And *Zinser* confirms that choice of law is a "fact-specific

19   inquiry" that requires the development of a factual record. *Todd*, 2016 WL 344479 at *6 (citing *Frenzel*,

20   76 F. Supp. 3d at 1007). Depending on how this Court rules on the not-yet-briefed choice of law issues,

21   Plaintiffs will navigate the choice of law issues consistent with the Court's decision.

22                              **b.    Superiority**

23           Defendants argue that Plaintiffs cannot show superiority. But the superiority inquiry, like the

24   predominance inquiry, is premature because it turns on facts and circumstances that will be developed in

25   discovery.

26           The "purpose of the superiority requirement is to assure that the class action is the most efficient

27   and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d

28   1168, 1175 (9th Cir. 2010) (citation omitted). A class may be superior "[w]here classwide litigation of

---

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' CLASS
ALLEGATIONS IN THE FIRST AMENDED COMPLAINT
CASE NO. 4:24-cv-01261-JST

1   common issues will reduce litigation costs and promote greater efficiency," *Valentino v. Carter-*

2   *Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996); *see also* Wright & Miller, Federal Practice and

3   Procedure § 1781 (3d ed.) ("[I]f common questions are found to predominate in an antitrust action, then

4   courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied."). Courts

5   examine four factors in making the superiority determination: "(A) the class members' interests in

6   individually controlling the prosecution … of separate actions; (B) the extent and nature of any litigation

7   concerning the controversy already begun by … class members; (C) the desirability or undesirability of

8   concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in

9   managing a class action." Fed. R. Civ. P. 23(b)(3).

10       At this juncture the efficiencies of a class is evident. The claims concern highly technical matters

11   that require expert testimony and significant expense. The key questions are narrow, including whether

12   the product was defective, whether the defect would harm eggs or embryos, and why Defendants

13   shipped a defective product. As discussed under the predominance factor, these narrow questions create

14   a single course of conduct that may be proven or disproved through common evidence.

15       As to the first factor, Defendants argue that the large claims asserted by the individual plaintiffs

16   in related cases arising from the defect shows that class treatment is inferior. Mot. at 23. But "even in

17   large claim situations, class actions will be a superior form of litigation if aggregation serves efficiency

18   goals and/or pretermits inconsistent outcomes." William B. Rubenstein, *Newberg on Class Actions* §

19   4:67 (5th ed. 2014); *see Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. 13-5693, 2015 WL 4776932, at

20   *16 (C.D. Cal. May 27, 2015). *Zinser* does not hold that higher-value claims cannot be certified; instead,

21   the presence of such claims is neutral in the superiority analysis. That "claims are high value simply

22   means that the value of the claims does not weigh in favor of certifying the class; it does not necessarily

23   mean that the value of the claims weighs against certifying the class. Indeed, in *Zinser*, the Ninth Circuit

24   confirmed this reading of the rule[.]" *Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431, 444 (C.D. Cal. 2014).

25       As to the second factor, the "the extent and nature of any litigation concerning the controversy

26   already commenced by or against members of the class," Plaintiffs acknowledge that some families have

27   chosen to pursue claims individually. But the precise scale of the impact, at this early stage before

28   discovery, is unknown. According to one estimate, as many as 20,000 patients may have been affected.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' CLASS
ALLEGATIONS IN THE FIRST AMENDED COMPLAINT
CASE NO. 4:24-cv-01261-JST

8

1    Am. Compl. (Dkt. 53) at ¶ 61. CooperSurgical itself identified over 300 affected patients that it has

2    communicated with just since this lawsuit was filed. That means the thirty-five affected families that

3    have chosen to pursue individual litigation in federal court is a fraction of the total population of

4    impacted patients. While the class case is proceeding alongside individual actions, it stands to reason

5    that some members of the proposed class wish to pursue their claims on an individual basis while others

6    prefer the efficiencies and anonymity associated with the class action. The relatively low rates of

7    litigation initiated by members of the class supports the superiority of a concurrent class action, and

8    further highlights the need for discovery, including about the total number of families impacted.

9            On the third factor, the desirability or undesirability of concentrating the litigation in a particular

10   forum, Defendants rely on *Zinser* and a district case cited by *Zinser*, *Haley v. Medtronic, Inc.*, 169

11   F.R.D. 643 (N.D. Cal. 1996). Both cases involved defective pacemakers. *Id.* But both are distinguishable

12   for the same reason: the courts emphasized specific causation varied widely because the pacemakers

13   were implanted by different doctors. *Zinser*, 253 F. 3d at 1192 (citing *Haley*, 169 F.R.D. at 654). "As a

14   result, the causes of plaintiffs' injuries are not entirely the same, since the injuries did not occur at the

15   same time, place or under the same conditions." *Id.* This divergence convinced the *Zinser* and *Haley*

16   courts that it would be undesirable to concentrate litigation in a single forum. *Id.*

17           Unlike pacemakers, here the product is not implanted in the body. Embryos and eggs are placed

18   into the culture media directly. The likelihood of and opportunity for intervening error by Plaintiffs'

19   fertility clinics—who only had to place the eggs or embryos into the culture—is far less than a surgeon

20   implanting a pacemaker. Thus the circumstances here are unlike in *Zinser* or *Haley*, and the

21   "undesirability of concentrating the litigation in a particular forum" is not present here. Defendants

22   suggest that the individual IVF treatment centers will be important in discovery, Mot. at 23, but do not

23   explain how. And if an issue class is certified under Rule 23(c)(4) on the question of general causation,

24   the central questions would be whether the media was defective and whether that defective media could

25   have damaged or destroyed eggs and embryos exposed to it. Any issues concerning the impact of actions

26   by individual IVF providers would be addressed separately.

27           Defendants' arguments on the fourth factor, which considers "the difficulties likely to be

28   encountered in the management of a class action," are largely duplicative of their earlier arguments.

---

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' CLASS
ALLEGATIONS IN THE FIRST AMENDED COMPLAINT
CASE NO. 4:24-cv-01261-JST

9

1   They repeat the fiction that, like *Zinser* and *Haley*, the product here was implanted in different states by

2   different doctors. Mot. at 24. And they repeat their choice of law argument that Plaintiffs' claims will be

3   decided under dozens of States' laws. *Id.* For the reasons previously discussed, both arguments are

4   unpersuasive and do not warrant striking Plaintiffs' class allegations at this early juncture.

5          **C.**       **Defendants Rule 23(b)(1) and 23(b)(2) Arguments are Misplaced**

6          Defendants move to strike Plaintiffs' class allegations under Rule 23(b)(1) and 23(b)(2). For the

7   same reasons as Rule 23(b)(3), this argument is premature. Whether a class may be certified under either

8   rule is a fact-specific inquiry that should await discovery and development of the record. Plaintiffs allege

9   equitable relief may be appropriate, and the facts of the case support on their face possible injunctive or

10  declaratory relief. Consol. Am. Compl. (Dkt. 54) ¶¶ 10, 81.

11         **D.**       **Defendants' Rule 23(c)(4) Arguments Also Miss the Mark**

12         Finally, Defendants argue that Plaintiffs will be categorically unable to certify an "issue class"

13  under Fed. R. Civ. P. 23(c)(4). Mot. at 28. Again, Defendants' Rule 23(c)(4) arguments are both

14  premature and wrong on the merits.

15         The use of issue classes under Rule 23(c)(4) is well established in the Ninth Circuit. "Even if the

16  common questions do not predominate over the individual questions so that class certification of the

17  entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the

18  common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues."

19  *Valentino*, 97 F.3d at 1234 (9th Cir. 1996); *see also In re Nassau Cty. Strip Search Cases*, 461 F.3d 219,

20  227 (2d Cir. 2006). An issue class may be certified when "it will materially advance the litigation,"

21  *Martin v. Behr Dayton Thermal Prod. LLC*, 896 F.3d 405, 416 (6th Cir. 2018), *cert. denied*, 139 S. Ct.

22  1319 (2019), as when it will serve to "accurately and efficiently resolve the question of liability, while

23  leaving the potentially difficult issue of individualized damage assessments for a later day." *Kamakahi v.*

24  *Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 176 (N.D. Cal. 2015) (citing *Jimenez v. Allstate Ins. Co.*,

25  765 F.3d 1161, 1165 (9th Cir. 2014)); *see Amador v. Baca*, No. 10-CV-1649-SVW, 2016 WL 8904537,

26  at *3 (C.D. Cal. Nov. 18, 2016) ("[T]he Ninth Circuit endorses 23(c)(4) liability classes.").

27         At this stage in the litigation, before discovery has begun, it is premature to suggest, let alone

28  conclude, that an issue class is impossible.  Plaintiffs could, for example, move to certify a class on the

1    issue of general causation and leave specific causation and individual damages for individual

2    adjudication. *See, e.g.*, *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 244 (N.D. Cal. 2014) (certifying an

3    issue class under Rule 23(c)(4) "solely for purposes of determining liability"). Taking their cue from

4    *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016), courts have recently certified issue

5    classes to resolve key liability issues in cases arising from a single incident. For example, in a case

6    concerning the discharge of toxic "black liquor" from a paper mill, the court certified an issue class for

7    purposes of deciding the defendant's liability for negligence, among other causes of action. *Slocum v.*

8    *Int'l Paper Co.*, No. CV 16-12563, 2019 WL 2192099, at *6 (E.D. La. May 21, 2019). The court found

9    that common issues predominated with respect to duty and breach, and that while specific or "medical

10   causation" was necessarily individualized in that case, issues of general causation and "(1) whether

11   Defendant's negligence caused the incident, (2) what the chemical composition of black liquor is, and

12   (3) whether black liquor has the potential to cause the kinds of damages of which Plaintiffs complain do

13   predominate." *Id*. at *5; *see also See Petersen v. Costco Wholesale Co.*, 312 F.R.D. 565, 583–84 (C.D.

14   Cal. 2016); *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1309 (N.D. Fla. 2017) (certifying issue

15   class based on findings that "the core . . . issues with respect to liability in this case—whether or not

16   Defendant's conduct caused the Dam to fail . . . caused flooding in the subject neighborhood, and . . . to

17   what extent Defendant should be held liable—are resolvable by proof that is common to all class

18   members").

19          Additional guidance is found in *In re Tri-State Crematory Litigation*, where the defendants were

20   charged with mishandling human remains, commingling the remains, and returning non-human

21   materials that were supposedly human remains to the decedents' families. 215 F.R.D. 660, 673 (N.D.

22   Ga. 2003). The court granted class certification to the plaintiff families, concluding that "variations in

23   the interactions between the defendant and a given plaintiff" did not defeat certification because the

24   facts of the case "are essentially identical for every Plaintiff. . . . Each and every Plaintiff claims that a

25   Funeral Home Defendant failed to perform that [cremation] service in a manner that conformed to the

26   standard of care for the funeral home industry, and the Plaintiff suffered emotional injury" as a result. *Id*.

27   at 69–96. The court therefore "exercise[d] its power under Rule 23(c)(4)(A) and Rule 23(b)(3) to certify

28

---

1    those issues related to Defendants' duty to Plaintiffs and whether Defendants breached that duty." *Id.* at
2    697.

3            Just as in *Tri-State Crematory*, here key issues regarding Defendants (*e.g.*, whether the Global
4    culture media was defective, whether Defendants had knowledge of the defect and when, and whether
5    they adequately warned of the defect) do not vary among the class members, who were uniformly
6    subjected to injury by the Defendants' conduct at issue. Those common issues could be resolved on a
7    classwide basis to advance the litigation as a whole.

8            Defendants point to the class certification order *In re Pacific Fertility Center Litig.*, 3:18-cv-
9    01586-JSC, 2020 WL 3432689 (N.D. Cal. June 23, 2020) ("Pacific Fertility"), another case that
10   involved the destruction of human eggs and embryos in the possession of an IVF provider. As a
11   threshold point, class certification in that case was not denied until the issues were fully briefed, which
12   itself counsels for denying the motion to strike presently before this Court. And on that full record,
13   Judge Corley in *Pacific Fertility* found that all the 23(a) factors were satisfied, and that "[p]redominance
14   is easily satisfied as to the proposed general causation issue class" because the core questions were
15   whether the malfunctioning storage tank was defective and if so, whether the defect could have damaged
16   the class's reproductive material. *Id.* at *4-6. *Pacific Fertility* declined to certify an issue class based on
17   a highly fact-specific superiority analysis that ultimately concluded that an individual bellwether trial
18   with potentially issue-preclusive effect was—in those specific circumstances, involving a relatively
19   small number of households affected by a single incident at a single local clinic—as good an option as a
20   Rule 23(c)(4) issue class trial. *Id.* at *6-8.

21           First, the location of critical events matters. Defendants argue this case involves "dozens" of
22   clinics around the country. Mot. at 30. But even Defendants admit that events common to all plaintiffs
23   happened at common locations, such one common formulation facility, one common manufacturing
24   facility and one common testing facility. *See* Response in Opposition, MDL No. 3122, Dkt. 30 at 2
25   (attached as Ex. A) ("This litigation involves . . . global culture media formulated by CooperSurgical in
26   Trumbull, Connecticut, and manufactured by CooperSurgical at its facility in Costa Rica on one day in
27   October 2023. The media at issue was shipped to independent vendor Embryotech Laboratories Inc. in
28   Haverhill, Massachusetts."). That the medium was shipped to "dozens" of clinic locations around the

1   country confirms that class treatment under Rule 23(c)(4) is even more appropriate here than in *Pacific*
2   *Fertility*, because resolution of the common issues will streamline any dispersed follow-on litigation. In
3   *Pacific Fertility*, in contrast, the incident occurred at one clinic in San Francsico, the cases were already
4   centralized in one district, and the court was thus able to efficiently resolve the case through trial without
5   class treatment. The fact that a single court presided over all the *Pacific Fertility* cases for all purposes
6   also meant that only that one court would decide the preclusive effect of a bellwether trial on federal
7   cases, minimizing the risk of inconsistent results from multiple courts that *Pacific Fertility* noted
8   typically—as here—weighs in favor of class treatment. *Id.* at *8.

9         Second, the *Pacific Fertility* decision took into account the fact that evidence presented in an
10   issue class trial would likely be presented again in follow-on individual trials to establish specific
11   causation and punitive damages. 2020 WL 3432689 at *6. Here, it is premature to assess the efficiency
12   gained in certifying the general causation question and the potential for overlapping evidence, because
13   that evidence has not yet been discovered or developed. But even before discovery, the Court can
14   conclude that this case is more like *Olden v. LaFarge Corp.*, 383 F.3d 495 (6th Cir. 2004), and *Slocum*
15   *v. Int'l Paper Co.*, No. CV 16-12563, 2019 WL 2192099 (E.D. La. May 21, 2019), distinguished by the
16   *Pacific Fertility* court, where the evidence to establish whether the incident "has the potential to cause
17   the kinds of damages of which Plaintiffs complain" would not need to be repeated in follow-on trials.
18   2020 WL 3432689 at *7 (discussing *Olden* and *Slocum*). Repetition regarding specific causation in
19   *Pacific Fertility* was made more likely by the particular circumstances of the case, including "evidence
20   as to earlier incidents and circumstances that could have harmed the reproductive material," which
21   would be repeated in each individual trial. *Id.* at *6. Certainly there is no evidence currently in the
22   record of any common earlier incident that would have impacted plaintiffs across their various clinics so
23   as to require the repetition of evidence in a specific causation trial. General causation evidence here is
24   likely to include information about Defendants' design and manufacturing of the media, whether it was
25   defective, and what impact any defect would have on the development of eggs and embryos exposed to
26   the media. Specific causation will likely involve evidence of when and for how long each class
27   member's eggs and embryos were exposed to the media, whether there were any other potential
28   contributing factors for those individuals, and the damages for each family. Significant overlap is neither

1   guaranteed nor necessary, and efficiencies are likely to be gained here by resolving the general causation

2   question for the class at once.

3        Finally, Defendants cite language in the *Pacific Fertility* case that class treatment was not needed

4   because class counsel was "in communication with ma[n]y putative class members," Mot. at 24, but

5   counsel are not in contact with the class to the same extent here. *Pacific Fertility* involved a well-

6   defined, small universe of affected patients who had reproductive material in a single storage tank that

7   malfunctioned, and nearly one third of the affected families had brought individual cases or pursed

8   arbitration against the clinic. *Id.* at *7. Here, as noted above, it is too soon to say what precise portion of

9   the class is represented by the thirty-five individual cases on file in federal court and in contact with

10  counsel, but it is certainly less than the significant portion in *Pacific Fertility*.

11       In sum, Defendants rely on class certification decisions like *Pacific Fertility* because they have

12  no cases involving Ninth Circuit product liability class claims under Rule 23(c)(4) struck at this stage.

13  This Court should do the same now, and at the appropriate procedural moment and on a developed

14  record, the Court is likely to reach a different result here than *Pacific Fertility* because the cases are

15  differently situated.

16       **E.      Defendants' Rule 23(d)(1)(D) Motion Should be Denied**

17       Finally, Defendants purport to move to strike under Fed. R. Civ. P. 23(d)(1)(D). Mot. at 15. They

18  provide little argument as to Rule 23(d)(1)(D) — just one sentence and two authorities, *Roberts v.*

19  *Wyndham Int'l, Inc.*, 2012 WL 6001459, at *3 (N.D. Cal. Nov. 30, 2012) and *Lyons v. Bank of Am., NA*,

20  2011 WL 6303390, at *7 (N.D. Cal. Dec. 16, 2011). *Id. Lyons* and *Roberts* both predate W*hittlestone* and

21  the modern trend of courts declining to entertain motions to strike class allegations completely. Both noted

22  only that they had authority to strike class allegations pursuant to Rule 23(d)(1)(D) but did not reference the

23  rule again but proceeded to only evaluate the motions to strike under Rule 12(f).

24       For the same reasons as discussed under Rule 12(f), Plaintiffs ask the Court to deny the motion.[2]

25

26  ────────────────────

27  [2] Defendants accuse Plaintiffs' counsel of engineering a class action purely to gain access to Rule 23
    and ask the court to intervene in Defendants' attempt to secure settlements with class members through

28  misleading communications. Mot. at 8, 17. In reality, Plaintiffs filed a class action to represent the

1  V.    **CONCLUSION**

2       Defendants do not move on permissible Rule 12(f) grounds, and for that reason alone the motion

3  should be denied. On the merits, Plaintiffs agree they will not pursue class certification under Rule

4  23(b)(1) or 23(b)(2). But a class under Rule 23(b)(3) or 23(c)(4) would be efficient and the best vehicle to

5  expeditiously resolving this litigation.

6

7  Dated: August 1, 2024                      Respectfully submitted,

8                                             /s/ *Dena C. Sharp*
9                                             Dena C. Sharp (State Bar No. 245869)
                                              Adam E. Polk (State Bar No. 273000)
10                                            Nina R. Gliozzo (State Bar No. 333569)
                                              Patrick T. Johnson (State Bar No. 329580)
11                                            **GIRARD SHARP LLP**
12                                            601 California Street, Suite 1400
                                              San Francisco, CA 94108
13                                            Telephone: (415) 981-4800
                                              Email: dsharp@girardsharp.com
14                                            Email: apolk@girardsharp.com
15                                            Email: ngliozzo@girardsharp.com
                                              Email: pjohnson@girardsharp.com
16
                                              Joseph G. Sauder
17                                            Matthew D. Schelkopf
18                                            Juliette T. Mogenson
                                              **SAUDER SCHELKOPF LLC**
19                                            1109 Lancaster Avenue
20                                            Berwyn, PA 19312
                                              Tel: (888) 711-9975
21                                            Facsimile: (610) 421-1326
                                              Email: jgs@sstriallawyers.com
22                                            Email: mds@sstriallawyers.com
23                                            Email: jtm@sstriallawyers.com

24                                            Tracey B. Cowan (State Bar No. 250053)
25                                            **CLARKSON LAW FIRM, P.C.**
                                              95 3rd St., 2nd Floor
26                                            San Francisco, CA 94103

27  ───────────────────

28  hundreds, potentially thousands, of families whose embryos have been damaged or destroyed, but have chosen, due to time, finances, life circumstances, or whatever reason, not to file individually.

Telephone: (213) 788-4050
Facsimile: (213) 788-4070
Email: tcowan@clarksonlawfirm.com

Ryan J. Clarkson (State Bar No. 257074)
Shireen M. Clarkson (State Bar No. 237882)
Olivia E. Davis (State Bar No. 353041)
**CLARKSON LAW FIRM, P.C.**
22525 Pacific Coast Highway
Malibu, CA 90265
Telephone: (213) 788-4050
Facsimile: (213) 788-4070
Email: rclarkson@clarksonlawfirm.com
Email: sclarkson@clarksonlawfirm.com
Email: odavis@clarksonlawfirm.com

*Counsel for Plaintiffs and the Proposed Class*

1

**<u>CERTIFICATE OF SERVICE</u>**

2

    I, Dena Sharp, hereby certify that on August 1, 2024, I electronically filed the foregoing

3

document using the CM/ECF system, which will send notification of such filing to all counsel of record

4

registered in the CM/ECF system.

5

6

    */s/ Dena C. Sharp*
    Dena C. Sharp

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28