Jenny A. Covington SBN 233625
Molly Jean Given (Pro Hac Vice)
**NELSON MULLINS RILEY &
SCARBOROUGH LLP**
1600 Utica Avenue South, Suite 600
Minneapolis, MN 55416
Telephone: (612) 464-7626
Facsimile: (612) 255-7499
Email: jenny.covington@nelsonmullins.com
mollyjean.given@nelsonmullins.com

Robert L. Wise (Pro Hac Vice)
**NELSON MULLINS RILEY &
SCARBOROUGH LLP**
1021 E. Cary Street, Suite 2120
Richmond, VA 23219
Telephone: (804) 533-3779
Facsimile: (804) 616-4129
Email: robert.wise@nelsonmullins.com

Jennifer T. Persky SBN 274804
**NELSON MULLINS RILEY &
SCARBOROUGH LLP**
19191 South Vermont Avenue, Suite 900
Torrance, CA 90502
Telephone: (424) 221-7400
Facsimile: (424) 221-7499
Email: jennifer.persky@nelsonmullins.com
Attorney for Defendants
THE COOPER COMPANIES, INC.
and COOPERSURGICAL, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, OAKLAND

| | |
|---|---|
| F.G. and H.I., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>COOPERSURGICAL, INC.; THE COOPER COMPANIES, INC.; AND DOES 1-10, inclusive,<br><br>Defendants. | Case No. 4:24-cv-01261-JST<br><br>Assigned to: Judge Jon S. Tigar<br><br>**DEFENDANTS COOPERSURGICAL, INC. AND THE COOPER COMPANIES, INC.'S REPLY ON MOTION TO STRIKE PLAINTIFFS' CLASS ALLEGATIONS IN THEIR FIRST AMENDED COMPLAINT (ECF 53)**<br><br>Hearing Date and Time: September 12, 2024 at 2:00 pm<br>Courtroom 4 – 3rd Floor<br>Complaint Filed: February 6, 2024 |

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................................... 2

    I.    Cooper accurately recited the law in the Ninth Circuit on motions to strike, and there should be no dispute that whether it is under Rule 12(f) or Rule 23, the Court has the authority to strike class allegations at the pleading stage. ....................................................................................................... 2

    II.   Plaintiffs' assertion that their class allegations are amenable to certification lacks merit. ........................................................................................ 4

        A.    Plaintiffs do not effectively rebut Cooper's showing on uncertifiability under Rule 23(b)(3). ........................................................ 6

            1.    Plaintiffs' response on predominance ignores much of Cooper's arguments, and otherwise simply reverts to their worn refrain of delay. ........................................................ 6

            2.    Plaintiffs' response on superiority similarly argues this issue is "premature," while otherwise failing to rebut effectively Cooper's showing that this requirement is likewise not met. ............................................................................ 8

        B.    Plaintiffs' curt (non)response with respect to the unavailability of class treatment under Rule 23(b)(1) and (b)(2) is wholly ineffective. ................................................................................................ 11

        C.    Plaintiffs fail to show that an issues class could be properly certifiable under Rule 23(c)(4) as to their highly individualized personal injury, product liability claims. ........................................... 12

CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

Cases

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591 (1997) ......................................................................................................... 6, 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................ 2

*Frenzel v. AliphCom*,
    76 F. Supp. 3d 999 (N.D. Cal. 2014) .................................................................................. 4, 5

*Haley v. Medtronic, Inc.*,
    169 F.R.D. 643 (C.D. Cal. 1996) ..................................................................................7, 9, 15

*In re Am. Med. Sys., Inc.*,
    75 F.3d 1069 (6th Cir. 1996) .............................................................................................. 7, 13

*In re Pac. Fertility Ctr. Litig.*,
    No. 18-cv-015686-JSC, 2020 WL 3432689 (N.D. Cal. June 23, 2020) ............................. passim

*In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*,
    208 F.R.D. 625 (W.D. Wash. 2002) ................................................................................1, 6, 11

*In re Telectronics Pacing Sys., Inc.*,
    172 F.R.D. 271 (S.D. Ohio 1997) ............................................................................................ 6

*In re Tri-State Crematory Litig.*,
    215 F.R.D. 660 (N.D. Ga. 2003) ............................................................................................ 13

*Lyons v. Bank of Am., NA*,
    No. C 11-1232 CW, 2011 WL 6303390 (N.D. Cal. Dec. 16, 2011) ......................................... 3

*Navelski v. Int'l Paper Co.*,
    244 F. Supp. 3d 1275 (N.D. Fla. 2017) ................................................................................. 13

*Olden v. LaFarge Corp.*,
    383 F.3d 495 (6th Cir. 2004) ................................................................................................. 14

*Roberts v. Wyndham Int'l, Inc.*,
    Nos. 12-CV-5180-PSG, 12-CV-5083-PSG, 2012 WL 6001459 (N.D. Cal. Nov. 30, 2012) ......... 3

*Slocum v. Int'l Paper Co.*,
    No. CV 16-12563, 2019 WL 2192099 (E.D. La. May 21, 2019) ........................................... 13

*Sterling v. Velsicol Chem. Corp.*,
    855 F.2d 1188 (6th Cir. 1988) ................................................................................................. 5

*Sweet v. Pfizer*,
    232 F.R.D. 360 (C.D. Cal. 2005) ............................................................................................. 7

*Tietsworth v. Sears, Roebuck & Co.*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) ................................................................................... 3

*Todd v. Tempur-Sealy Int'l, Inc.*,
    No. 13-CV-04984-JST, 2016 WL 344479 (N.D. Cal. Jan. 28, 2016) .................................... 4, 5

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................................................. 11, 12

*Whittlestone, Inc. v. Handi-Craft Co.*,
  618 F.3d 970 (9th Cir. 2010) ......................................................................................................... 2

*Zinser v. Accufix Rsch. Inst., Inc.*,
  253 F.3d 1180 (9th Cir.) ..................................................................................................... passim

Rules

Fed. R. Civ. P. 23 ..................................................................................................................... 6

Fed. R. Civ. P. 23(b)(1) ......................................................................................................... 11

Fed. R. Civ. P. 23(b)(1) and (b)(2) ................................................................................... 11, 12

Fed. R. Civ. P. 23(b)(1)(A) and (b)(1)(B) ............................................................................ 11

Fed. R. Civ. P. 23(b)(2) .................................................................................................. 11, 12

Fed. R. Civ. P. 23(b)(3) ........................................................................................................... 6

Fed. R. Civ. P. 23(b)(3)(A) .................................................................................................... 9

Fed. R. Civ. P. 23(c)(1)(A) ..................................................................................................... 5

Fed. R. Civ. P. 23(c)(4) ........................................................................................................ 12

**MEMORANDUM OF POINTS AND AUTHORITIES**

In their Motion to Strike the class allegations from Plaintiffs' First Amended Complaint ("FAC," ECF No. 53), Defendants CooperSurgical, Inc., and The Cooper Companies, Inc., (collectively, Cooper) acknowledged that motions to strike in general are disfavored, and that motions to strike class allegations are rarely granted, tracking precedent from the Ninth Circuit and this District. Cooper also showed, again relying on precedent from the Ninth Circuit and this District as well as a host of others, that given the nature of this litigation, this case presents one of the rare instances where a motion to strike should be granted. Plaintiffs primarily mount a procedural-based opposition, arguing that Rule 12(f) is per se not a proper vehicle for striking class allegations (which ignores the split in authority on this issue as recognized by this District), and that Cooper supposedly dedicated only one sentence to using Rule 23 as a vehicle for striking class allegations (which is demonstrably inaccurate).

Beyond that, Plaintiffs respond with arguments that largely ignore Cooper's recited facts and law in favor of relying on entirely distinguishable case law that has no relevance to the arguments here, such as cases denying motions to strike class allegations in non-personal injury/product liability contexts. To this point, Plaintiffs argue that "Defendants did not cite to a single case from this Circuit that struck product liability class claims at the pleading stage." (ECF No. 75 at 2.) This is untrue. For example, Cooper cited *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 208 F.R.D. 625, 630 (W.D. Wash. 2002), in which the court granted a motion to strike class allegations under Rule 23(b)(1) and (b)(3) at the pleading stage and without discovery. (ECF No. 69 at 10, 12, 19, 21.)

Plaintiffs ignore that is they who have failed to cite a single case where a court in this Circuit *granted* class certification on personal injury, product liability claims such as theirs—much less on a nationwide or multi-state basis, as Plaintiffs seek. Rather, throughout their response, Plaintiffs rely on materially distinguishable cases that do not involve personal injury, product liability claims, much less on a nationwide or multi-state basis. In other words, while Plaintiffs assert that striking class allegations must be reserved for the "exceptional" case, they refuse to acknowledge just how exceptional their putative nationwide, personal injury, product liability class action is. Meanwhile, the most on-point case from within this Circuit supports only Cooper, as it denied class certification even as to an issues class on strikingly similar facts involving personal injury, product liability claims. *In*

*re Pac. Fertility Ctr. Litig.*, No. 18-cv-015686-JSC, 2020 WL 3432689 (N.D. Cal. June 23, 2020). If anything, the facts there were more favorable for certification than they are here, given that the facts there involved an incident at only one facility with only California law to be applied . . . and still this District denied certification.

Overall, Plaintiffs' opposition boils down to cries of "premature," "wait for certification," and "trust us, we can show certifiability." Essentially, their argument is that while they have not plausibly supported their pleading this as a class action now, they hope to be able to do so after discovery—an argument that should land with a thud following the Supreme Court's reasoning in *Twombly*, in which the Court rejected the notion that barebones and conclusory pleading should be enough to open the gates to discovery, and recognized the significant discovery costs imposed by discovery, especially in the context of a putative class action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559–60 (2007). But discovery will change nothing in terms of the reasons Cooper presents as to why their putative classes will never be properly certifiable as pled. All the while, Plaintiffs' counsel continues to file individual action after individual action on behalf of what would be members of this putative class, which only further reinforces the desire for claimants to proceed individually and control their own litigation and, thus, the lack of superiority of this putative class action.

There is no justifiable reason to delay the inevitable. The Court should conserve party and Court resources and strike their class allegations now.

## ARGUMENT

**I.   Cooper accurately recited the law in the Ninth Circuit on motions to strike, and there should be no dispute that whether it is under Rule 12(f) or Rule 23, the Court has the authority to strike class allegations at the pleading stage.**

In responding to Cooper's showing that, whether it is under Rule 12(f) or Rule 23, courts in the Ninth Circuit have the authority to strike class allegations at the pleading stage, Plaintiffs attempt to avoid this reality with a "divide and conquer" approach. First, they argue that Rule 12(f) is an improper vehicle for striking class allegations following *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010), and that the Court should deny the motion on this basis. (ECF No. 75 at 1, 2, 4–5.) Later, they argue that the Court should deny the motion under Rule 23 because Cooper

2

DEFENDANTS COOPERSURGICAL, INC. AND THE COOPER COMPANIES, INC.'S NOTICE OF MOTION AND
MOTION TO STRIKE PLAINTIFFS' CLASS ALLEGATIONS IN THEIR FIRST AMENDED COMPLAINT
CASE NO. 4:24-CV-01261

provides "little argument as to Rule 23(d)(1)(D) – just one sentence and two authorities, which they argue both "predate *Whittlestone*." (*Id.* at 14.) Both arguments are misplaced.

Cooper fully acknowledged the differing rulings on the propriety of relying on Rule 12(f) to strike class allegations—indeed, Cooper discussed this at length, citing numerous decisions both pre- and post-*Whittlestone*. (ECF No. 69 at 7–10.) The questioning courts have raised about Rule 12(f)'s propriety for this purpose is precisely why Cooper also moved under Rule 23, which it likewise discussed at length. Plaintiffs' assertion that Cooper dedicated "just one sentence" to striking class allegations under Rule 23 is simply untrue—Cooper's opening brief referenced and discussed striking class allegations under Rule 23 numerous times. (*Id.*; *also, e.g.*, *id.* ("In particular, both Rule 23 and Rule 12 provide 'authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained.' *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010) (recognizing such authority under 'Rules 23(c)(1)(A) and 23(d)(1)(D), as well as pursuant to Rule 12(f)')").)

Plaintiffs' assertion that Cooper addressed Rule 23 as a basis to strike class allegations in "just one sentence" is thus demonstrably incorrect. As is their assertion that the "two authorities" Cooper cited in that sentence "both predate *Whittlestone*." (ECF No. 75 at 14.) Those cases— *Roberts v. Wyndham Int'l, Inc.*, Nos. 12-CV-5180-PSG, 12-CV-5083-PSG, 2012 WL 6001459 (N.D. Cal. Nov. 30, 2012), and *Lyons v. Bank of Am., NA*, No. C 11-1232 CW, 2011 WL 6303390 (N.D. Cal. Dec. 16, 2011)—were decided in 2012 and 2011, respectively. *Whittlestone* was decided in April 2010, a year and a half *before* the earlier of the two. Plaintiffs are simply backwards on the timing. Moreover, it is unclear what point Plaintiffs were even trying to make, as *Whittlestone* did not mention Rule 23(d)(1)(D) at all, since it was not a putative class action, and the court was not addressing a motion to strike class allegations. It is therefore unclear why *Whittlestone* would have any bearing on *Roberts* or *Lyon* even if it had post-dated those cases, which it did not.

Regardless of the reasons behind Plaintiffs' misguided attacks, Cooper's showing still stands—whether it is under Rule 12(f) or Rule 23, courts have the authority to strike class allegations, as Cooper showed at length with decisions both within and outside the Ninth Circuit. (ECF No. 69 at 7–11.) Plaintiffs' attempt to evade scrutiny by taking issue with the procedural

3

vehicles Cooper employed is thus unavailing.

## II. Plaintiffs' assertion that their class allegations are amenable to certification lacks merit.

Plaintiffs first assert there is no per se rule in this Circuit against personal injury, product liability class actions. (ECF 75 at 5.) Yes, Cooper squarely stated this. (ECF 69 at 12.) Still, Plaintiffs could not provide a single example of a court in this Circuit certifying personal injury, product liability claims such as theirs for class treatment, much less on a nationwide/multi-state basis. Instead, Plaintiffs return to their familiar refrain of "premature," this time arguing the Court must await a choice-of-law analysis which they argue requires a more developed factual record. (ECF 75 at 5.) Exactly why, they do not say. Rather, they cite to factually inapposite cases for generic statements in which courts have determined on the facts there that choice of law required discovery. (*Id.* (citing *Frenzel v. AliphCom*, 76 F. Supp. 3d 999 (N.D. Cal. 2014) (declining to grant motion to strike putative class allegations by plaintiff asserting claims under California consumer protection statutes for fraudulent inducement and misrepresentations related to his purchase of a fitness-tracker wristband); *Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-CV-04984-JST, 2016 WL 344479 (N.D. Cal. Jan. 28, 2016) (another economic injury putative class action alleging violations of consumer protection laws and related claims involving the sale of mattresses and other bedding products)).)

Plaintiffs' reference to *Todd* is incomplete, in that after this Court observed that many courts "reserve choice-of-law analysis and dismissal of nationwide class claims for the class certification stage," the Court noted that still other "courts have been willing to dismiss nationwide class claims at the pleading stage." 2016 WL 344479, at *6 (citing decisions)). Moreover, this Court rejected a prematurity argument in *Todd* and *declined* to wait for class certification, albeit given the posture of that case. *Id.*

Plaintiffs' reliance on *Frenzel*, meanwhile, is ironic for two reasons. First, the *Frenzel* court considered the defendant's motion to strike class allegations under Rule 12(f), contrary to Plaintiffs' argument here that such is per se improper. 76 F. Supp. 3d at 1006. Second, after noting that courts often defer choice-of-law issues for class certification, the *Frenzel* court declined to delay the issue until class certification, noting that there "are cases in which further development of the factual record is not reasonably likely to materially impact the choice of law determination," and that in

4

DEFENDANTS COOPERSURGICAL, INC. AND THE COOPER COMPANIES, INC.'S NOTICE OF MOTION AND
MOTION TO STRIKE PLAINTIFFS' CLASS ALLEGATIONS IN THEIR FIRST AMENDED COMPLAINT
CASE NO. 4:24-CV-01261

"such cases, it is not clear [] that deferring choice of law analysis until class certification is either warranted by the inquiry's fact-specific nature or beneficial to plaintiffs in any meaningful way." 76 F. Supp. 3d at 1007–08. So, too, here—Plaintiffs do not explain how or why *this* case would be any different from factually analogous precedent from the Ninth Circuit and elsewhere that has recognized that the laws of the States materially vary when it comes to personal injury, product liability claims such as Plaintiffs. *E.g.*, *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1188 (9th Cir.), *op. am. on denial of reh'g,* 273 F.3d 1266 (9th Cir. 2001) (observing "the laws of negligence [and] product[s] liability . . . all differ in some respects from state to state"). Nor have they shown that kicking the can until class certification is either warranted or beneficial to the parties or the court "in any meaningful way"—especially when nowhere in their response do they assert that their claims could be governed by one State's laws nor deny that the States' laws materially vary nationwide on their claims. As *Todd* and *Frenzel* show, contrary to Plaintiffs' suggestion, there is hardly a hard-and-fast, universal rule that courts cannot resolve issues that implicate choice of law until after discovery and class certification.[1]

In addition, Plaintiffs' likening of this litigation to a mass tort "disaster" is off base, such as their citation to *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188 (6th Cir. 1988), which involved a chemical spill and resulting groundwater contamination to residents who lived in close proximity to the defendant's landfill. (ECF No. 75 at 6.) Such actions involving one incident at one location and affecting individuals all from one state and implicating one state's laws routinely qualify for class treatment—and they are nowhere near the facts here. *See in re PPA Prod. Liab. Litig.*, 208 F.R.D. at 631 (acknowledging that "courts have distinguished products liability class actions from those

---

[1] If the Court were not inclined to follow *Zinser* and other decisions to hold that the laws of all the States nationwide must be applied to the individual class members' claims—similar to what it did in *Todd* by following *Mazza* to conclude that "the differences in law between the states involved in this litigation are material," 2016 WL 344479, at *6–7—then, respectfully, Cooper submits the Court should order expedited briefing on this issue so it may rule on the propriety of this matter proceeding as a putative class action as soon as practicable. Fed. R. Civ. P. 23(c)(1)(A). At that time, Plaintiffs could present whatever "manageable trial plan" they think "could resolve any individual issues that surface," despite their being unable to point to any personal injury, product liability case on claims in which such a plan has been presented and found manageable for conducting nationwide litigation on claims such as theirs. (*See* ECF 75 at 5.) But there is certainly nothing beneficial to be gained by deferring this issue until after protracted discovery and until class certification.

involving what courts deem 'typical' mass torts").

Plaintiffs likewise misplace their reliance on *Amchem Prod., Inc. v. Windsor,* (ECF No. 75 at 6), as they ignore that in the same paragraph from which they excerpt, the Court recognized the Rule 23 Advisory Committee's note that even true "'mass accident' cases are likely to present 'significant questions, not only of damages but of liability and defenses of liability, . . . affecting the individuals in different ways," and that as a result "such cases are 'ordinarily not appropriate' for class treatment." 521 U.S. 591, 625 (1997). As the Court explained, the Committee's warning "continues to call for caution when individual stakes are high and disparities among class members great." *Id.* Thus, the Court overturned the Third Circuit's grant of certification of a settlement class of personal injury, asbestos claims there because "the certification in th[at] case" did "not follow the counsel of caution." *Id. Amchem* does not support Plaintiffs—it undermines them.

Finally, Plaintiffs' citation to *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271 (S.D. Ohio 1997), not only runs counter to their own criticism of reliance on out-of-circuit cases, but also ignores the Ninth Circuit's rejection of the *Telectronics* court's finding of predominance. As the *Zinser* court wrote: "Zinser argues that the district court abused its discretion by holding that variances in state laws overwhelm common issues of fact. Citing *Telectronics,* 172 F.R.D. at 290–94, Zinser maintains predominance is not destroyed and the case is still manageable as a class action despite the application of the law of multiple jurisdictions. *We disagree.*" 253 F.3d at 1189 (emphasis added). Cooper showed that Plaintiffs' claims are and will be uncertifiable for class treatment as pled and alleged, regardless of the path under Rule 23. Plaintiffs fail to show otherwise.

**A.     Plaintiffs do not effectively rebut Cooper's showing on uncertifiability under Rule 23(b)(3).**

**1.     Plaintiffs' response on predominance ignores much of Cooper's arguments, and otherwise simply reverts to their worn refrain of delay.**

As Cooper showed, Plaintiffs' proposed nationwide personal injury, product liability claims cannot satisfy Rule 23(b)(3)'s predominance requirement. (ECF 69 at 14–16.) Plaintiffs note that Cooper relied primarily on *Zinser*, an on-point Ninth Circuit decision involving personal injury, product liability claims sought to be certified on a nationwide/multi-state basis, which the Ninth

6

Circuit rejected. (*Id.*; *also* ECF No. 75 at 6–7.) But Cooper did not rely solely on *Zinser*—rather, it cited and relied on several other similar personal injury, product liability cases that reached similar outcomes. (ECF No. 69 at 14–16.) Plaintiffs ignored those other on-point decisions, instead citing generic points of law from factually inapposite cases involving economic consumer/warranty claims (*In re Hyundai & Kia*) and employment/wage claims arising under federal law and Washington law only (*Torres*). (ECF No. 75 at 6–7.)

As for *Zinser*, Plaintiffs don't refute and instead ignore Cooper's reliance on the Ninth Circuit's conclusion that in that similar personal injury, product liability putative class action, even with some allegedly common issues on defect and negligence, "it is inescapable that many triable individualized issues may be presented." (ECF No. 69 at 15.) Nor do Plaintiffs refute *Zinser*'s conclusion that "where the applicable law derives from the laws of all 50 states," as here, "as opposed to a unitary federal cause of action, differences in state law will 'compound [] the disparities among class members from different states." (*Id.* (quoting Zinser, 253 F.3d at 1189).) Nor do Plaintiffs resist the inevitable conclusion that no one state's law would apply to their claims, and that they would instead be governed by the laws of dozens of states (at least 33). (*Id.* at 15–16 (citing *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 653–54 (C.D. Cal. 1996); *Sweet v. Pfizer*, 232 F.R.D. 360, 374 (C.D. Cal. 2005); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996)).)

Plaintiffs also ignore the issue of the individual putative class members' claims implicating "individualized issues" that would be compounded by the unavoidable and undeniable material variations in States' laws. Instead, they return to their oft-repeated refrain of promises that they will be the ones to overcome the obstacles presented by the compounding and confounding reality of differing states' laws necessarily applying and to do what so many others before them could not. (ECF No. 75 at 7.) They fail, however, to point to any example of where that was accomplished, even after discovery and a full choice-of-law analysis, as they urge here. (*Id.*)

Finally, Plaintiffs likewise wholly ignore Cooper's showing that a significant issue on which there will be an undeniably material variation and radically divergent views across the states is that of the legal status, treatment, and viability of claims involving a loss of embryos. (ECF No. 69 at 16.) Plaintiffs do not even attempt to take on that showing.

Plaintiffs' argument on predominance is par for the course with their response as a whole—ignore the unfavorable arguments and thorny issues for which they have no response, and for the rest, simply urge delay. But this would be delay for delay's sake only. Plaintiffs offer no legitimate or reasonable hope of showing predominance and certifiability on their claims as pled.

### 2. Plaintiffs' response on superiority similarly argues this issue is "premature," while otherwise failing to rebut effectively Cooper's showing that this requirement is likewise not met.

In response to Cooper's showing that superiority is also lacking for class treatment on their highly individualized claims, Plaintiffs again cry "premature," arguing that this issue "turns on facts and circumstances that will be developed in discovery." (ECF No. 75 at 7.) Again, however, they don't explain what these "facts and circumstances" are that may be developed, much less how, nor do they explain how their development would impact the analysis.

Plaintiffs baldly proclaim that "the efficiencies of a class is [sic] evident," citing the technical nature of some of the evidence and that the "narrow questions create a single course of conduct that may be proven through common evidence." (ECF No. 75 at 8.) There is not, however, a single course of conduct as in a true "mass tort", as shown above. Moreover, even were they correct, Plaintiffs do not explain why this would countenance in favor of a class action, as opposed to coordination of related actions or other mechanisms (such as the MDL they have sought). It doesn't, as multi-plaintiff, non-class action litigation is often managed effectively and efficiently through coordination of individual actions.

As for the first of the four factors guiding the superiority analysis, Plaintiffs primarily ignore the patent inconsistency of their rote allegation in their FAC that the value of their claims is "relatively small compared to the burden and expense that would be required to individually litigate these claims" with their counsel's and their putative fellow class member's pursuit of 36 actions individually and their assertion that their claims are worth at least $75,000, along with punitive damages. (ECF No. 69 at 17.) Plaintiffs cannot refute that the potential dollar value of the individual claims must properly be considered, but they argue that it should not carry the day. (ECF No. 75 at 8.) Even if true, "the interest of each member in 'individually controlling the prosecution or defense of separate actions'" hinges on more than mere monetary value of the claims. *See* Fed. R. Civ. P.

8

23(b)(3)(A). It also includes and is most compelling in cases where there is "an emotional stake in the litigation." *Haley*, 169 F.R.D. at 652. This is another problematic issue for Plaintiffs, given their allegations in their complaint and other filings in which they repeatedly allege the highly emotionally and psychologically charged nature of their claims. (*See* ECF No. 69 at 17.) Plaintiffs have nothing to say on this point . . . so they just ignore it. Their silence confirms and concedes Cooper's argument—this first factor weighs against superiority.

As for the second factor, "the extent and nature of any litigation concerning the controversy already commenced by or against the class," Plaintiffs argue that the fact that dozens of individuals have chosen to proceed individually—including every single one of the 37 plaintiffs in the 19 actions filed by this same Plaintiffs' counsel both before and after they filed this action—is meaningless given the potential number of impacted putative class members. (ECF No. 75 at 9.) But their argument runs headlong into *Zinser*. There, the court noted the district court's observation that "[a]lthough thousands of patients were implanted here with [the product], only nine lawsuits are pending; this indicates that individual litigation may be sufficient to satisfy potential claims." 253 F.3d at 1191. Here, Plaintiffs argue as many as "20,000 patients have been affected," compared to the 41 individual lawsuits. (ECF No. 75 at 3, 9.) Consistent with *Zinser*, this ratio suggests that "individual litigation may be sufficient to satisfy potential claims."

Plaintiffs also speculate that those who have not already filed individually may nevertheless wish to pursue claims and to do so via the relative anonymity of class treatment and without sitting for deposition. (ECF No. 75 at 9.) To the extent that speculation is supported, this District already addressed a similar concern, noting that such litigants "may be able to resolve their claims . . . without ever having to sit for deposition" by waiting for other cases to try first and for bellwether results to be obtained. *Pac. Fertility*, 2020 WL 3432689, at *8. But this claimed concern does not weigh in favor of certification. *Id.*

As for the third factor—"the desirability or undesirability of concentrating the litigation in a particular forum"—Plaintiffs argue that *Zinser* and *Haley* are distinguishable because the individual IVF treatment centers and other dispersed evidence and witnesses supposedly will not be important in discovery. (ECF No. 75 at 9.) This is simply inaccurate. While the culture media is one

9

factor relevant to the success of embryo development, it is hardly the only such factor. To the contrary, the in-vitro fertlization (IVF) community has identified numerous variables impacting the potential success of IVF. In 2018, international experts met in Cairo, Egypt, to develop consensus guidelines for IVF laboratories and published those guidelines in 2020. 'There is only one thing that is truly important in an IVF laboratory: everything,' *Cairo Consensus Guidelines on IVF Culture Conditions,* 40 RBMO 33 (2020) (attached as Ex. A). The Consensus Guidelines emphasize that it is "important to recognize that the embryo culture medium is but one among perhaps hundreds of factors in the IVF laboratory that might affect the outcome of any given cycle." *Id.* at 35. Those factors include "every pipette tip, holding tube and culture dish that is in contact with any of several media." (*Id.*) "Laboratory apparatus, gases and procedures could all have effects independent of the culture medium: the fact that a developmental anomaly or failure appears while the embryo is in a culture medium does not mean the medium is responsible for it." (*Id.*) The consensus group concluded, "There is only one thing that is truly important in an IVF laboratory: everything." (*Id.*) And the Consensus Guidelines elaborated on the multitude of other factors that affect IVF success and necessarily vary from facility to facility, including temperature, humidity, carbon dioxide levels, workstation design and engineering, dish preparation and incubators, oocyte recovery, sperm preparation, and even light. *Id.* at 35–49. Thus, contrary to Plaintiffs' bald assertion, the putative class members' individual IVF centers will be very much front and center in their individual cases.

Finally, as to the fourth factor—"the difficulties likely to be encountered in the management of a class action"—Plaintiffs offer nothing new. (ECF No. 75 at 9–10.) They write that Cooper repeats its "choice of law argument that Plaintiffs' claims will be decided under dozens of States' laws." (*Id.* at 10.) But again, Plaintiffs do not refute the truth of that assertion. Yet they claim that despite that unrefuted reality, the Court should for some reason still not follow *Zinser* to find the complexities "inherent in trying claims of negligence [and] products liability . . . with differing state laws" to be too formidable to conclude that a class action would be manageable, and that class treatment would be superior. 253 F.3d at 1192. Meanwhile, they simply ignore the conclusion from *Haley* that "where compensation is sought for personal injuries, not property damages, class treatment would be unmanageable, and would clearly not be 'superior.'" 169 F.R.D. at 655.

10
DEFENDANTS COOPERSURGICAL, INC. AND THE COOPER COMPANIES, INC.'S NOTICE OF MOTION AND
MOTION TO STRIKE PLAINTIFFS' CLASS ALLEGATIONS IN THEIR FIRST AMENDED COMPLAINT
CASE NO. 4:24-CV-01261

B.  **Plaintiffs' curt (non)response with respect to the unavailability of class treatment under Rule 23(b)(1) and (b)(2) is wholly ineffective.**

With abundant law from within the Ninth Circuit—including from the Ninth Circuit itself—Cooper showed that class treatment is inappropriate here under Rule 23(b)(1), including a Ninth Circuit district court decision granting a motion to strike class allegations asserted under both Rule 23(b)(1)(A) and (b)(1)(B). (ECF No. 69 at 19–21 (discussing *In re PPA Prod. Liab. Litig.*, 208 F.R.D. 625). In response, while citing no authority, Plaintiffs respond only that whether a class could be certified under Rule 23(b)(1) is "premature" and "a fact-specific inquiry that should await discovery and development of the record." (ECF No. 75 at 10.) But they fail to explain how whether they may pursue a Rule 23(b)(1) class is supposedly a fact-specific inquiry, while they offer nothing to support that discovery would change anything. And they ignore that the court in *In re PPA* struck class allegations as to a Rule 23(b)(1) class at the pleading stage, as noted above. 208 F.R.D. at 630.

Moreover, Plaintiffs wholly fail to address the case law Cooper cited showing this is not a fact-specific inquiry but is instead a legal inquiry—including *Zinser*, 253 F.3d at 1186—and one that is properly decided on a motion to strike—including *In re PPA*, 208 F.R.D. at 630. (ECF No. 69 at 19–21.) Plaintiffs offer nothing to respond to Cooper's well-supported arguments. Their opposition is simply nonresponsive. Whether on the basis of Cooper's arguments, or based simply on Plaintiffs' nonresponse, the Court should strike their allegations as to a Rule 23(b)(1) class.

Plaintiffs' response as to their Rule 23(b)(2) allegations is equally perfunctory. (ECF No. 75 at 10.) They rely on the same arguments of "premature" and "await discovery" with no explanation of how discovery could ever change the reality that what they seek by their complaint are money damages, which the Ninth Circuit has explained are inappropriate for class treatment under Rule 23(b)(2), as Cooper showed. (ECF No. 69 at 21–22 (citing *Zinser*, 253 F.3d at 1195; *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011)). The only thing they add as to a Rule 23(b)(2) class is reference to their boilerplate allegations in their complaint that Plaintiffs seek "equitable relief" and that the "Defendants have acted or refused to act on grounds generally applicable to the Class, making injunctive and corresponding declaratory relief appropriate with respect to the Class as a

| | |
|---|---|
| 1 | whole"—the latter of which obviously merely parrots the Rule itself. (ECF 75 at 10.)[2] They ignore, |
| 2 | however, their own Prayer for Relief, which seeks only money damages, as well as that under none |
| 3 | of their seven causes of action do they seek—much less allege facts or assert causes of action |
| 4 | plausibly supporting entitlement to—injunctive or declaratory relief. (ECF No. 53 at 24.) And as |
| 5 | for their supposed request for "equitable" relief, such is "irrelevant" because Rule 23(b)(2) "does |
| 6 | not speak of 'equitable' remedies generally but of injunctions and declaratory judgments." *Dukes*, |
| 7 | 564 U.S. at 365. |
| 8 | As with subpart (b)(1), Plaintiffs fail to defend their request for a class under Rule 23(b)(2). |
| 9 | The Court should strike Plaintiffs' class allegations as to both Rule 23(b)(1) and (b)(2). |

### C. Plaintiffs fail to show that an issues class could be properly certifiable under Rule 23(c)(4) as to their highly individualized personal injury, product liability claims.

Relying on a factually analogous case from this District, Cooper showed that even as an issues class, certification would be improper under Rule 23(c)(4) to address any aspect of Plaintiffs' highly individualized personal injury, product liability claims. (ECF No. 69 at 22–24.) Indeed, that was precisely the outcome in *Pacific Fertility*, which, if anything, presented fewer impediments to certification than this case does. In response, Plaintiffs follow the same pattern. First, they argue that it is premature to resolve whether an issues class could be properly certifiable, and the Court must wait for discovery. (ECF No. 75 at 10.) But again, they fail to explain how any discovery would change the realities of the uncertifiability of what they propose. It did not in *Pacific Fertility*, and Plaintiffs fail to explain how this case would be any different after discovery when it comes to the uncertifiability of an issues class.

Next, they argue that "the use of issue classes under Rule 23(c)(4) is well established in the Ninth Circuit." (ECF No. 75 at 10.) But that generic proposition has never been in dispute. The question is whether such would be appropriate here. And this is where Plaintiffs fall short, as they never make the transition from the generic to the specific—namely, to show that an issues class would be and has been held to be proper in a case like theirs involving highly individualized personal

---

[2] Plaintiffs reference to a "Consol. Am. Compl. (Dkt. 54) ¶¶ 10, 81" was presumably intended to refer instead to their First Amended Complaint, which is actually found at ECF No. 53.

injury, product liability claims. Rather, they rely on entirely distinguishable cases, mostly out-of-circuit, such as *Slocum v. Int'l Paper Co.*, No. CV 16-12563, 2019 WL 2192099 (E.D. La. May 21, 2019), which involved claims arising from the discharge of contaminated waste from one paper mill in Louisiana, where the litigants were all from Louisiana and only Louisiana law applied. (ECF No. 75 at 11.) Equally unhelpful is their reliance on *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1284 (N.D. Fla. 2017), another paper mill case involving a dam break causing discharge wastewater to flood several neighborhoods and claims for property damage only—again, the plaintiffs were all from one state (Florida) and asserted their property-damage claims solely under Florida law.

Similarly, in *In re Tri-State Crematory Litig.*, 215 F.R.D. 660 (N.D. Ga. 2003), the court allowed an issues class on certain negligence issues for claims arising from the mishandling of human remains. (ECF No. 75 at 11.) The court granted an issues class, however, only after resolving that "this litigation does not present the type of individuated issues that most frequently lead to denial of class status for lack of predominance of common issues in diversity jurisdiction class action negligence claims." 215 F.R.D. at 695. The court recognized that the "two types of cases that typically fail the requirement are: (1) cases where variations in state law overwhelm the common issues, and (2) cases where variations in operative facts—often variations in the interactions between the defendant and a given plaintiff—defeat predominance of common issues." *Id.* (footnotes omitted). The very cases *Tri-State Crematory* cited as examples include the personal injury, product liability cases arising under the laws of multiple states that Cooper has cited, such as *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), and *In re Am. Med. Sys., Inc.,* 75 F.3d 1069 (6th Cir.1996). 215 F.R.D. at 695, nn. 24 & 25.

Moreover, the issues Plaintiffs propose the Court could certify for resolution under an issues class here are the same as those this District concluded would be improper to resolve on an issues-class basis in *Pacific Fertility*. 2020 WL 3432689, at *6 (noting the plaintiffs' proposed issues to be: "was Tank 4 defective? Did the defect cause the March 4 incident? Could the incident have damaged the reproductive material? Was Chart aware of the defect prior to the incident and therefore negligent in failing to recall the tank?"); (ECF No. 75 at 12 (proposing same types of issues on defect, negligence, knowledge, and warnings/recall)). And their proposal for an issues class on

knowledge and warnings ignores the patent factual dissimilarity even among just the two named plaintiffs, where one set had their procedure performed before Cooper issued the recall, while the other set had their performed after. (ECF No. 53, ¶¶ 54, 64, 70.)

Unsurprisingly, after relying on factually distinguishable, out-of-circuit cases, Plaintiffs attempt to distance themselves from *Pacific Fertility*, which is undeniably the most factually analogous decision either party cited. (ECF No. 75 at 12–14.) Oddly, Plaintiffs attempt to liken this case to the very cases *Pacific Fertility* rightly distinguished in rejecting an issues class there— *Slocum*, discussed above, and *Olden v. LaFarge Corp.*, 383 F.3d 495 (6th Cir. 2004), which was again yet another case involving pollutant discharge from a facility affecting neighboring homeowners and claims that would be decided under one State's law. Beyond that, Plaintiffs' attempts to distinguish *Pacific Fertility* further fail. For example, they argue there would be no duplication of evidence in individual trials on specific causation. (ECF No. 75 at 13.) But just as in *Pacific Fertility*, the later juries on specific causation trials would need to hear the same evidence on the role the culture media in the process and how any issues with the composition of the media and any potential complications for the process could also be impacted by numerous other factors, as discussed above.

Similarly, Plaintiffs ignore *Pacific Fertility*'s recognition that "much of the evidence presented in the general causation trial would have to be presented again in the individual trials on the punitive damages question" because to "determine whether [the defendant's] conduct warrants punitive damages, and how much, the individual trial juries will hear evidence as to what [the defendant] knew and when and what it failed to do, as well as evidence of the defect and what it could cause." 2020 WL 3432689, at *6. Here, Plaintiffs similarly propose as one of their issues "whether Defendants had knowledge of the defect and when." (ECF No. 75 at 12.) But as in *Pacific Fertility*, this same evidence would have to be presented in specific causation trials. "Thus, there is little efficiency gained in certifying the general causation question." 2020 WL 3432689, at *6.

Moreover, while Plaintiffs attempt to portray this litigation as less complex than in *Pacific Fertility*, they ignore the fact that the court there rejected an issues class where only one State's law was at issue, yet here there are at least 33 States' laws in play. (ECF No. 69 at 24 (citing *Haley*, 169

14

DEFENDANTS COOPERSURGICAL, INC. AND THE COOPER COMPANIES, INC.'S NOTICE OF MOTION AND
MOTION TO STRIKE PLAINTIFFS' CLASS ALLEGATIONS IN THEIR FIRST AMENDED COMPLAINT
CASE NO. 4:24-CV-01261

F.R.D. at 656).) And Plaintiffs further ignore *Pacific Fertility*'s other reasons for rejecting an issues class there, such as the "serious question as to whether a general causation class action trial is superior in other respects to individual . . . trials on all issues," and that court's observation that given "potential amount of damages at stake, as well as the personal and private nature of the claims, each absent class member has a strong interest in individually prosecuting an action should the member so choose." 2020 WL 3432689, at *7. Plaintiffs have no response to these conclusions, which apply with equal force to their claims—especially considering the dozens of actions filed before and after this one asserting claims on an individual basis only. And "given those cases, the risk of inconsistent results which often makes certification superior will exist regardless of whether the proposed issue class is certified in this action." *Id.* (citing *Zinser*, 253 F.3d at 1191).

Plaintiffs fail to effectively show that this litigation, which is strikingly similar to *Pacific Fertility* and, if anything, presents an even more compelling case for denying certification on an issues class basis, would or should come out any differently even after any discovery.

## CONCLUSION

For the foregoing reasons and those stated in its opening brief, the Court should strike Plaintiffs' class allegations from their First Amended Complaint.

Dated: August 12, 2024

        Respectfully submitted,

        NELSON MULLINS RILEY & SCARBOROUGH LLP

By:   */s/ Jenny A. Covington*
      Jenny A. Covington, SBN 233625
      1600 Utica Ave. So., Ste. Suite 600
      Minneapolis, MN 55416
      Tel:   (612) 464-7626
      Fax:  (612) 255-0739

      *Attorney for Defendants The Cooper Companies, Inc., and CooperSurgical, Inc.*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 12, 2024, I electronically filed the foregoing document entitled ***DEFENDANTS COOPERSURGICAL, INC. AND THE COOPER COMPANIES, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFFS' CLASS ALLEGATIONS IN THEIR FIRST AMENDED COMPLAINT*** with the Clerk of Court using the CM/ECF System, which will send a notice of electronic filing to all Counsel of record in this action.

*/s/ Jenny A. Covington*
Jenny A. Covington