UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| F.G., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>COOPERSURGICAL, INC., et al.,<br><br>    Defendants. | Case No. 24-cv-01261-JST<br><br>**ORDER DENYING MOTIONS TO DISMISS AND STRIKE**<br><br>Re: ECF No. 68, 69 |

Before the Court is CooperSurgical Inc.'s ("CooperSurgical") motion to dismiss and CooperSurgical and The Cooper Companies, Inc.'s ("CooperCompanies") (together, "Defendants") motion to strike. ECF Nos. 68, 69. The Court will deny the motion to strike and the motion to dismiss as directed to Plaintiffs T.U and V.W.

## I.  BACKGROUND[1]

### A.  Defendants CooperSurgical and CooperCompanies

CooperSurgical and CooperCompanies "manufacture, market, and sell products to fertility clinics, including a culture media product designed to support the growth and development of embryos created through" in vitro fertilization ("IVF"). FAC ¶ 2.[2] Embryo culture media is "a nutrient-rich liquid that surrounds a fertilized egg during the incubation period to help it develop into a viable embryo as part of the IVF process." *Id.* "Embryo culture media is typically comprised of multiple ingredients including carbohydrates, amino acids, vitamins, magnesium, and growth factors." *Id.* ¶ 49. "Magnesium is required for embryonic development and is a key

---

[1] For the purpose of resolving CooperSurgical's motion to dismiss, the Court accepts as true the allegations in the first amended complaint, ECF No. 53 ("FAC"). *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).
[2] CooperSurgical is "a wholly owned subsidiary" of CooperCompanies. *Id.* ¶ 21.

element to repair mutations during cell division. Insufficient magnesium levels in embryo culture media can cause embryo growth to arrest and inhibit DNA repair." *Id.* ¶ 50.

On December 5, 2023, CooperSurgical issued a recall notice for three lots of media sold under its Global Media line. *Id.* ¶¶ 48, 54. The recall notice stated, in part, that "'CooperSurgical [had] become aware of a sudden increase in complaints regarding the aforementioned lots of this product,' acknowledged that the 'risk to health is impaired embryo development prior to the blastocyst stage,' and directed clinics who purchased the product to quarantine and return it." *Id.* ¶ 55. Plaintiffs' complaint alleges that "Defendants knew or should have known that magnesium is a critical component and essential element of embryo culture media, and that a lack of magnesium in the Global Media may result in the destruction or arrested development of human embryos." *Id.* ¶ 57. Plaintiffs contend that "Defendants failed to adequately monitor their manufacturing systems and processes, and allowed for the production of embryo culture media without ensuring that sufficient amounts of magnesium was included." *Id.* ¶ 58. Plaintiffs further allege that "Defendants did not properly test or inspect the impacted lots of Global Media until after receiving numerous complaints from fertility clinics that embryos cultured in Defendant's Global Media were dying at elevated rates." *Id.* ¶ 59.

**B.      Plaintiffs F.G. and H.I.**

Plaintiffs F.G. and H.I. are "a married couple that sought fertility treatment at a fertility clinic in New York, undergoing the invasive, expensive, and emotionally taxing process of IVF in the hopes of having biological children." *Id.* ¶ 4. In November 2023, F.G. and H.I.'s fertility clinic "fertilized four of F.G.'s eggs with H.I.'s sperm and placed them in Defendants' culture media." *Id.* ¶ 64. "Each of the four eggs was successfully fertilized, but all of F.G. and H.I.'s developing embryos were destroyed due to Defendants' defective culture media." *Id.* ¶ 65.

In February 2024, F.G. and H.I.'s fertility clinic notified them that their embryos were exposed to the culture media subject to a recall and that "[w]hile [CooperSurgical] has not completed the investigation, [CooperSurgical does] believe that the issues observed in the field are likely due to a reduced level of magnesium in the media." *Id.* ¶ 66. F.G. is "older now [than] she was at the time the eggs used to create the lost embryos were retrieved," so "even if Plaintiffs are

2

1    able to create additional embryos . . . those embryos made with older eggs would not have as high

2    of a chance of successfully developing into a healthy child or children." *Id.* ¶ 67.

### C. Plaintiffs T.U. and V.W.

Plaintiffs T.U. and V.W. are a couple who underwent "the expensive and emotionally taxing process of IVF in the hopes of having children. To maximize their chances, [they] secured donor eggs from a young, healthy donors. Their plan was to implant the healthy embryos in Plaintiff T.U.'s uterus so that she could experience carrying their child to term." *Id.* ¶ 5. They "engaged in IVF treatment at Zouves Fertility Center in Foster City, California. The IVF process produced six fertilized eggs that were to be developed into viable embryos." *Id.* ¶ 69. On December 8, 2023, their fertility clinic "fertilized six of the donor eggs and placed them in Defendants' culture media." *Id.* ¶ 70.

"Each of the six eggs was successfully fertilized, but all but one of T.U. and V.W.'s developing embryos were destroyed due to Defendants' defective culture media. The remaining embryo developed to blastocyst, but was later determined through genetic testing to be chromosomally abnormal and thus unusable." *Id.* ¶ 71.

In February 2024, T.U. and V.W. were notified by their fertility clinic that their embryos were "exposed to the defective culture media, which was subject to a recall" and that the "quality control issue could have resulted in fewer embryos than [they] would otherwise have made embryo development [sic]." *Id.* ¶ 72.

Plaintiffs allege that the embryos they lost "are irreplaceable" and that T.U. and V.W. "are both older now." *Id.* ¶ 73. "As a result, even if Plaintiffs are able to afford to create additional embryos—an emotionally taxing and financially costly procedure that is by no means guaranteed to succeed—those embryos made with older sperm may not have as high of a chance of successfully developing into a healthy child or children, and Plaintiff T.U. faces heightened risks of possible health complications from carrying a child to term." *Id.*

### D. Procedural History

Plaintiffs brought this action against Defendants alleging strict products liability (manufacturing defect, design defect, and failure to warn), negligent failure to recall, negligence or

gross negligence, trespass to chattels, and unjust enrichment. *Id.* at 17–24. Plaintiffs brought these claims on behalf of themselves and on behalf of a class composed of "[a]ll individuals in the United States whose eggs and/or embryos were exposed to Recalled Lots of Defendants' Global Media product (Global Media Lots number 231020-018741, 231020-018742, and 231020-018743)." *Id.* ¶ 74. Including the present case, there are now at least 39 cases pending before the undersigned making similar claims against Defendants.

CooperSurgical and CooperCompanies have each filed separate motions to dismiss but one joint motion to strike the class allegations. ECF Nos. 67, 68, 69. After Defendants filed their motions, the Court issued an Order Granting Defendants' Motions to Dismiss and Granting Plaintiffs Jurisdictional Discovery in the related case, *Walden v. CooperSurgical*, 4:24-cv-00903-JST (N.D. Cal. Sept. 9, 2024). In light of the Court's *Walden* order, the Court defers ruling on CooperCompanies' motion to dismiss as well as the portion of CooperSurgical's motion directed to the non-California Plaintiffs pending the completion of jurisdictional discovery. *See* ECF No. 88 at 2. But the Court will now decide Defendants' motion to strike and the portion of CooperSurgical's motion to dismiss directed to T.U. and V.W. *See id.*; ECF No. 93.

## II.   JURISDICTION

Plaintiffs allege this Court has jurisdiction under 28 U.S.C. § 1332(d).

## III.   MOTION TO DISMISS

### A.   Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

4

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While this standard is not "akin to a 'probability requirement' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel*, 393 F.3d at 1072.

**B. Discussion**

**1. Recoverable Damages**

CooperSurgical argues that T.U. and V.W.'s cannot seek emotional distress damages because they have not alleged facts "to show that they were physically injured," and embryos are "likely" considered property under California law—thus limiting recovery to economic losses under contract law rather than tort. ECF No. 68 at 24–29. T.U. and V.W. respond that "embryos are considered a very special type of property under California law" and that they "may recover emotional distress damages from Defendants who proximately caused damage to that special property." ECF No. 77 at 32 (citing *In re Pac. Fertility Ctr. Litig.*, 2021 WL 5161926, at *9 (N.D. Cal. Nov. 5, 2021) (upholding jury's assessment of emotional distress damages for the destruction of eggs and embryos); *Windeler v. Scheers Jewelers*, 8 Cal. App. 3d 844, 852 (1970) (emotional distress damages were recoverable following defendant's negligent loss of irreplaceable family heirloom); *Christensen v. Superior Ct.*, 54 Cal.3d 868, 890–91 (1991) (recovery for emotional distress available for improper handling of cremated human remains)).

Assuming, without deciding, that embryos would be considered property under California law, the Court concludes that emotional distress damages are available for the negligent destruction of those embryos. CooperSurgical is correct that the law in California generally does not permit recovery of emotional distress damages for negligent damage to personal property. *See Gonzales v. Pers. Storage, Inc.*, 56 Cal. App. 4th 464, 476 (1997) (citing *Cooper v. Superior Ct.*, 153 Cal. App. 3d 1008, 1012–13 (1984)). Under the common law, however, this bar on recovery

5

is subject to exception when the defendant's negligent conduct "occurs in the course of specified categories of activities, undertakings, or relationships in which negligent conduct is especially likely to cause serious emotional harm." Restatement (Third) of Torts: Phys. & Emot. Harm § 47 (2012). "Courts have expanded liability for negligent infliction of emotional harm when the circumstances involved provide confidence that reasonable persons subjected to the psychological trauma involved would suffer serious emotional harm." *Id.* A case involving the negligent destruction of a human embryo—like the case involving human remains cited above—inarguably falls in this category.

Courts in other jurisdictions have permitted emotional distress claims in similar circumstances. The Superior Court of Rhode Island permitted a claim for emotional distress damages for the negligent loss of frozen pre-embryos. *Frisina v. Women & Infants Hosp. of Rhode Island*, No. CIV. A. 95-4037, 2002 WL 1288784, at *10 (R.I. Super. May 30, 2002). And *Jeter v. Mayo Clinic Arizona* left open the question of whether emotional distress damages were available for the negligent destruction of frozen human pre-implantation embryos, in light of the "special respect" due pre-embryos. 211 Ariz. 386, 403, (Ct. App. 2005) (citing *Davis v. Davis*, 842 S.W.2d 588, 597 (Tenn. 1992)). *But see Doe v. Irvine Sci. Sales Co.*, 7 F. Supp. 2d 737, 740–41 (E.D. Va. 1998) (dismissing claim for negligent infliction of emotional distress based on manufacturer's failure to withdraw defective Human Albumin that contaminated cryopreserved embryos).

Notably, one court in California has upheld a jury's award of emotional distress damages in a case involving the destruction of cryopreserved eggs and embryos caused by the failure of a defective storage tank. *See Pac. Fertility*, 2021 WL 5161926, at *8–9. CooperSurgical argues *Pacific Fertility* is distinguishable because that case involved "matured, frozen embryos" rather than developing embryos and/or fertilized eggs as here. ECF No. 80 at 15. As an initial matter, CooperSurgical's recitation of the facts is incorrect—the claims in *Pacific Fertility* involved the destruction of both frozen embryos and frozen *eggs*. *See* ECF No. 77-4 at 17 ("Plaintiffs allege that Tank 4 lost liquid nitrogen during an incident that occurred the weekend of March 4, 2018, damaging or destroying their eggs and embryos."). Moreover, even if the case did evidence a

factual distinction between frozen embryos and frozen eggs, CooperSurgical fails to explain why emotional distress damages would be available for the destruction of "matured, frozen embryos" but not fertilized eggs—particularly given its argument that all embryos are considered property and not the proper subject of emotional distress damages.

For all these reasons, the Court finds that emotional distress damages are available and that T.U. and V.W. have sufficiently alleged damages to support their claims.

### 2.  Causation

CooperSurgical next argues that T.U. and V.W. have not sufficiently alleged causation for their claims because (1) they have not demonstrated that CooperSurgical was "responsible for their fertilized eggs . . . not grow[ing] into blastocysts," when "the IVF process is uncertain and provides no guarantee that any one step will be successful with no attrition," ECF No. 68 at 26–27, and (2) T.U. and V.W.'s fertilized eggs were placed in the media three days *after* CooperSurgical issued its recall notice, ECF No. 68 at 24.  The Court is unpersuaded by either argument.

First, T.U. and V.W. allege that CooperSurgical's culture media caused their embryos and eggs to be damaged or destroyed because it had insufficient levels of magnesium.  FAC ¶¶ 1–9, 96.  And while the IVF process does not guarantee success, T.U. and V.W. allege that CooperSurgical reduced their *chances* of success by depriving their fertilized eggs of the necessary nutrients for development to viability.  *See* FAC ¶¶ 3, 5, 8, 71–72.  As both parties acknowledge, causation is a fact-intensive inquiry often left for the jury.  *See* ECF No. 77 at 22 ("Defendants' argument at core raises a question of fact for the jury."); ECF No. 80 at 13 ("causation is often a matter for the jury"); *see Doe v. Lawndale Elementary Sch. Dist.*, 72 Cal. App. 5th 113, 126 (2021) (noting that "factual and legal causation" . . . are usually questions for the jury" (citation omitted)).  At the pleading stage, T.U. and V.W. need not conclusively prove that the culture media's defect destroyed their fertilized eggs.  They merely need to advance a plausible theory of liability.  *See, e.g., Greer v. Cnty. of San Diego*, No. 3:19-CV-0378-GPC-AGS, 2019 WL 5453955, at *10 (S.D. Cal. Oct. 24, 2019) ("Because these detailed factual allegations offer a plausible theory of pattern and causation, the Plaintiff's claims against the County survive a

7

1  12(b)(6) motion to dismiss."). They have done so.

2  Second, CooperSurgical's timing argument is similarly unavailing. CooperSurgical argues that because T.U. and V.W.'s fertilized eggs "were placed in the media *after* it was recalled, any damage to their fertilized eggs is not the fault of CooperSurgical . . . ; rather, if anything, it is the fault of the fertility clinic for using recalled materials, if they were even used." ECF No. 68 at 24. But the timing of the recall does not categorically negate liability at this pleading stage. As T.U. and V.W. argue, there are many potential chains of events that could lead a jury to conclude that CooperSurgical is liable notwithstanding the timing of the recall. For example, T.U. and V.W.'s fertility clinic "may not have received notice of the recall within those three days, or the clinic might have placed the embryos in the medium earlier than they represented to Plaintiffs." ECF No. 77 at 30. And any negligence on the fertility clinic's part for using recalled materials may raise questions of apportioned fault but not necessarily absolve CooperSurgical of all liability. The Court therefore rejects CooperSurgical's arguments regarding causation.

### 3. Strict Products Liability—Design Defect

"'A manufacturer may be held strictly liable for placing a defective product on the market if the plaintiff's injury results from a reasonably foreseeable use of the product.'" *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1024 (N.D. Cal. 2012) (quoting *Saller v. Crown Cork & Seal Co.*, 187 Cal. App. 4th 1220, 1231 (2010)). "California law recognizes two tests for establishing a design defect under product liability law: the 'consumer expectations test' and the 'risk-benefit test.'" *Reynolds v. EzriCare LLC*, No. 3:23-CV-01632-JSC, 2023 WL 7166816, at *6 (N.D. Cal. Oct. 30, 2023) (citing *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 418 (1978)).

T.U. and V.W. allege sufficient facts to meet both tests. Under the consumer expectations test, they allege that the "culture media was used as intended when it came into contact with [their] embryos" and that "ordinary users do not expect culture media to prevent embryo development." FAC ¶¶ 92, 94. But contrary to expectations, T.U. and V.W.'s embryos were destroyed as a result of the defective culture media. *Id.* ¶ 8. Taken as true, these allegations state a claim for strict liability due to a design defect. *See Reynolds*, 2023 WL 7166816, at *6. T.U. And V.W. similarly plausibly state a claim under the risk-benefit test, as they allege that the "risks" of inhibiting

8

embryo development outweigh any possible benefits of formulating the culture without a sufficient level of magnesium. FAC ¶¶ 96–97.

CooperSurgical argues that T.U. and V.W. fail to allege a design defect claim because the facts "describe a manufacturing issue with discrete batches of the product, not an issue with its entire design or warnings." ECF No. 68 at 24. But T.U. and V.W. do allege a defect relating to the design of the recalled Global Media; they allege an issue with the "formulation" of the culture media. FAC ¶ 96. While only certain lots of Global Media were recalled, this is not fatal to a design defect claim. As T.U. and V.W. argue, the non-recalled lots may have still been subject to the same defective design, but may simply not have malfunctioned in the same way. ECF No. 77 at 30. Or CooperSurgical "may have designed [its] production sequence without a reasonable number of tests to ensure product quality." *Id.* T.U. and V.W. need not prove these facts at this pleading stage, and the facts as alleged plausibly state a design defect claim.

### 4. Strict Products Liability—Failure to Warn

Failure to warn is "a species of design defect products liability." *Saller*, 187 Cal. App. 4th at 1238 (citing *Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 994–95 (1991)). Under this theory, "a product, although faultlessly made, may nevertheless be deemed 'defective' under the rule and subject the supplier thereof to strict liability if it is unreasonably dangerous to place the product in the hands of a user without a suitable warning and the product is supplied and no warning is given." *Canifax v. Hercules Powder Co.*, 237 Cal. App. 2d 44, 53 (1965).

"The duty to warn requires that the manufacturer knows, or should have known, of the danger of the product at the time it is sold or distributed." *Saller*, 187 Cal. App. 4th at 1239 (citing *Brown*, 44 Cal. 3d at 1065–66; *Anderson*, 53 Cal. 3d at 1000). The plaintiff must sufficiently allege that the defendant "did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the manufacture and distribution . . . ." *Anderson*, 53 Cal.3d at 1002–03 (footnote omitted). Here, T.U. and V.W. allege that the culture media used for their embryo development had risks "that were known or knowable in light of the scientific and medical knowledge that was generally accepted in the scientific community" and that CooperSurgical

failed to give adequate warnings "concerning the risk of defect that its formulation lacked sufficient magnesium and would stop embryos [sic] development." FAC ¶¶ 101–02.

CooperSurgical argues that T.U. and V.W.'s failure-to-warn claim fails for three reasons. First, CooperSurgical "properly relied on their fertility clinic and its medical providers to convey appropriate warnings to" T.U and V.W., and a "manufacturer's liability to the ultimate consumer 'may be extinguished by 'intervening cause' where the manufacturer . . . provides adequate warnings to a middleman.'" ECF No. 68 at 25 (quoting *Garza v. Asbestos Corp.*, 74 Cal. Rptr. 3d 359, 367 (Cal. Ct. App. 2008), *as mod.* (Apr. 2, 2008)). Second, CooperSurgical contends that it had no duty to warn of the alleged defect in the media because it was unaware of the defect. *Id.* Third, CooperSurgical argues that when a sophisticated intermediary is involved, no warnings are required. *Id.* The Court rejects all three arguments.

CooperSurgical's first argument fails because Plaintiffs allege that CooperSurgical did not *provide* any warnings. ECF No. 53 ¶¶ 102, 104, 106, 130. Thus, there is no way to conclude at this stage that such warnings, if given, were adequate.

CooperSurgical's second argument fails for similar reasons. Plaintiffs allege actual knowledge of the alleged defect. *Id.* ¶¶ 57, 104, 105, 113, 114, 119, 127. CooperSurgical's protestations to the contrary create a dispute of fact that the Court cannot resolve on a motion to dismiss. Moreover, even if CooperSurgical did not have actual knowledge about the alleged defect, it still had a duty to warn of that defect if it was a risk "knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the manufacture and distribution . . . ." *Anderson*, 53 Cal.3d at 1002–03 (footnote omitted). Here, T.U. and V.W. allege that the levels of magnesium necessary to support the development of fertilized eggs in the culture media was known at the time of manufacture and distribution. *See* FAC ¶ 57. They further allege that CooperSurgical could have ensured that sufficient amounts of magnesium were included in its embryo culture media but did not because of deficient monitoring, testing, and inspection. *Id.* ¶¶ 58–59. The alleged defect was thus "knowable," and Plaintiffs have adequately pleaded that CooperSurgical had a duty to warn about it.

Finally, CooperSurgical cites *Webb v. Special Electric Co.*, 63 Cal. 4th 167, 182 (2016), to

10

argue that "sophisticated users need not be warned about dangers of which they are already aware or should be aware." This argument again raises factual disputes that cannot be resolved at this stage. And even taking the argument on the merits, *Webb* elaborates that the "focus of the defense . . . is whether the danger in question was so generally known within the trade or profession that a manufacturer should not have been expected to provide a warning specific to the group to which plaintiff belonged." *Id.* (internal quotation marks and citation omitted). Here, "the danger in question" was an alleged defect present in the Global Media that CooperSurgical asserts that even it did not know about when it distributed the media to fertility clinics. *See* ECF No. 68 at 25. The defect thus could not have been one "so generally known within the trade or profession" that CooperSurgical should not have been expected to provide a warning to T.U. and V.W. or to their fertility clinic.

### 5. Strict Products Liability—Manufacturing Defect

Under California law, "[t]o state a claim under strict liability theory for a manufacturing defect, a plaintiff must allege the following elements: '(1) he has been injured by the product; (2) the injury occurred because the product was defective; and (3) the defect existed when the product left the hands of the defendant.'" *Smith v. Medtronic, Inc.*, No. 22-CV-09179-JSW, 2023 WL 4849432, at *3 (N.D. Cal. July 28, 2023) (quoting *Nichols v. Covidien LP*, No. 20-cv-06836-EMC, 2021 WL 764134, at *3 (N.D. Cal. Feb. 26, 2021) (citations omitted)). To survive a motion to dismiss for failure to state a claim, a plaintiff alleging a manufacturing defect must "*identify/explain* how the [product] either deviated from [defendant's] intended result/design or how the [product] deviated from other seemingly identical [product] models." *Trabakoolas v. Watts Water Techs.*, Inc., No. 12-CV-01172-YGR, 2012 WL 2792441, at *4 (N.D. Cal. July 9, 2012) (emphasis and alterations in original) (quoting *Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1155 (E.D. Cal. 2010) (citing *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 429 (1978))). "A bare allegation that the [product] had 'a manufacturing defect' is an insufficient legal conclusion." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 754 F. Supp. 2d 1208, 1222 (C.D. Cal. 2010) (alteration in original) (citing *Barker*, 20 Cal. 3d at 429)).

1    T.U. and W.V. allege that (1) they suffered economic loss and emotional distress because
2 the defective culture media destroyed their embryos; (2) that the injury occurred, at least in part,
3 because the culture media lacked a sufficient level of magnesium; and (3) the magnesium defect
4 existed in the culture media when it left CooperSurgical's possession. ECF No. 53 ¶¶ 85, 87. The
5 only arguments CooperSurgical raises for why T.U. and V.W.'s manufacturing defect claim is
6 deficient are the causation and damages arguments addressed above. Accordingly, T.U. and V.W.
7 have adequately alleged a manufacturing defect.

### 6. Negligent Failure to Recall

Under California law, a manufacturer may be liable if it fails to recall a product after "either a shift in industry standards or post-sale knowledge [] puts a manufacturer on notice regarding a dangerous product defect." *Roberts v. Electrolux Home Prods., Inc.*, No. CV-12-1644, 2013 WL 7753579, at *13 (C.D. Cal. Mar. 4, 2013) (citing *Lunghi v. Clark Equip. Co.*, 200 Cal. App. 3d, 485, 494 (Cal. Ct. App. 1984)).

T.U. and V.W. allege that CooperSurgical did not "timely recall the defective culture media" after it knew or should have known about the alleged defect. *See* FAC ¶¶ 112–16. CooperSurgical argues that T.U. and V.W.'s failure-to-recall claim fails because CooperSurgical did issue a recall notice for the affected lots on December 5, 2023—three days before T.U. and V.W.'s eggs were placed in the culture media. *See* ECF No. 68 at 27. For the same reasons discussed in the Court's causation analysis, the Court finds that the mere fact that a recall notice was issued does not negate liability at this stage. CooperSurgical may still have delayed in issuing a notice, or the notice may have been ineffective at preventing injury. But T.U. and V.W. need not prove those facts now, and they have plausibly stated a claim for relief.

### 7. Negligence and/or Gross Negligence

Negligence requires that (1) the defendant owed the plaintiff a legal duty; (2) the defendant breached the duty; and (3) the breach proximately or legally caused (4) the plaintiff's damages or injuries. *Thomas v. Stenberg*, 206 Cal. App. 4th 654, 662 (2012) (citing *Ann M. v. Pacific Plaza Shopping Ctr.*, 6 Cal.4th 666, 673 (1993)). CooperSurgical argues that T.U. and V.W.'s negligence and gross negligence claims fail because they have not adequately alleged causation,

1   and California's economic loss rule bars their recovery. ECF No. 68 at 28. The Court has already

2   addressed CooperSurgical's causation argument above.

3   As to its second argument, "California decisional law has long recognized that the

4   economic loss rule does not necessarily bar recovery in tort for damage that a defective product

5   (e.g., a window) causes to other portions of a larger product (e.g., a house) into which the former

6   has been incorporated." *Jimenez v. Superior Ct.*, 29 Cal. 4th 473, 483, 58 P.3d 450 (2002). As

7   T.U. and V.W. argue, their "damaged embryos are not the property that was purchased or subject

8   to any contractual promise." ECF No. 77 at 32. Rather, the allegedly defective product purchased

9   was the culture media, which in turn destroyed T.U. and V.W.'s fertilized eggs. Because T.U. and

10  V.W. seek to recover for damage to "property other than the [culture media] itself," the economic

11  loss rule does not bar their recovery for damage to their eggs.

### 8. Trespass to Chattels

In California, trespass to chattels "lies where an intentional interference with the possession of personal property has proximately caused injury." *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 455 (N.D. Cal. 2018) (quoting *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 54 Cal. Rptr. 2d 468, 473 (1996)). "[T]he intent necessary to prove trespass to chattels includes intentional behavior that only mistakenly causes harm as well as conduct committed willfully." *Crab Boat Owners Ass'n v. Hartford Ins. Co. of the Midwest*, No. C03-05417 MHP, 2004 WL 2600455, at *5 (N.D. Cal. Nov. 15, 2004).

T.U. and V.W. allege that CooperSurgical acted intentionally in "manufacturing a defective product that destroyed the material instead of safely culturing the fertilized eggs to develop into healthy embryos, and by failing to recall or warn about the dangers of this product before it was used on Plaintiffs' and class members' reproductive material." FAC ¶ 130. They have thus sufficiently alleged that CooperSurgical's intentional actions interfered with their possession of the fertilized eggs.

### 9. Unjust Enrichment and/or Restitution

While California case law is not entirely clear on whether unjust enrichment is an

independent cause of action,[3] the Ninth Circuit has "construed the common law to allow an unjust enrichment cause of action through quasi-contract" seeking restitution. *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). "Unjust enrichment is generally an inapplicable basis for restitution where the parties have an enforceable express contract . . . ." *Sepanossian v. Nat'l Ready Mix Co., Inc.*, 97 Cal. App. 5th 192, 207, 315 Cal. Rptr. 3d 373, 385 (2023). Notably, "[t]o confer a benefit . . . it is not essential that money be paid directly to the recipient by the party seeking restitution." *City of Oakland v. Oakland Raiders*, 83 Cal. App. 5th 458, 478 (2022) (citing *Hirsch v. Bank of Am.*, 107 Cal. App. 4th 708, 722 (2003)). "[W]here someone other than the plaintiff provided the benefit the defendants allegedly unjustly retained, as between the plaintiff and the defendant, the plaintiff is entitled to restitution from the defendant where the plaintiff 'has a better legal or equitable right.'" *Id.* at 479 (quoting Restatement (Third) of Restitution and Unjust Enrichment § 48).

Here, T.U. and V.W. allege that CooperSurgical earned revenue from selling defective culture media to fertility clinics, which led to the destruction of many individuals' fertilized eggs and embryos. As CooperSurgical recognizes, "CooperSurgical was never paid by [T.U. and V.W.]," ECF No. 68 at 29, so there is no express contract under which T.U. and V.W. could recover. But T.U. and V.W. can still recover under an unjust enrichment theory if they have a better legal or equitable right to the revenues earned by CooperSurgical from selling to the fertility clinics. T.U. and V.W. allege that "[r]etention of the payments received under these circumstances is unjust and inequitable because Defendants' representations and labeling of the recalled embryo culture media lots was misleading to consumers, which caused injuries to Plaintiffs . . . ." FAC ¶ 143. Accordingly, they have adequately pleaded a claim for unjust enrichment and/or restitution.

## IV. MOTION TO STRIKE

Defendants ask the Court to strike the class allegations under either Rule 12(f) or Rule 23.

---

[3] *Compare Castillo v. Toll Bros.*, 197 Cal. App. 4th 1172, 1210 (2011) ("California does not recognize unjust enrichment as a separate cause of action") *with LeBrun v. CBS Television Studios, Inc.*, 68 Cal. App. 5th 199, 209–12 (2021) (appearing to agree with the trial court that unjust enrichment is a separate cause of action).

Federal Rule of Civil Procedure 12(f) authorizes the Court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quotation marks and citations omitted). Similarly, Federal Rule of Civil Procedure 23(d)(1)(D) allows the Court to "issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D).

"[A] motion to strike class claims based only on the pleadings is proper only if the court is 'convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed.'" *Parducci v. Overland Sols., Inc.*, 399 F. Supp. 3d 969, 976 (N.D. Cal. 2019) (quoting *In re iPad Unlimited Data Plan Litig.*, 2012 WL 2428248, at *2 (N.D. Cal. June 26, 2012)). "[D]ismissal of class allegations at the pleading stage should be done rarely and . . . the better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery." *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) (quoting *Myers v. MedQuist, Inc.*, No. 05-4608, 2006 WL 3751210, *4 (D.N.J. 2006) (internal quotation omitted)); *see also* 7AA Charles Alan Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure Civil § 1785.3 (3d. 2005) (providing that the practice employed in the overwhelming majority of class actions is to address class certification issues only after an appropriate period of discovery).

Here, Defendants argue that the putative classes will never be certifiable because Plaintiffs' highly individualized personal injury and claims under the laws of dozens of states predominate over common issues. ECF No. 69 at 17–28. Plaintiffs argue that Defendants' motion is improper because Defendants do not argue that Plaintiffs' class claims are "part of an insufficient defense, redundant, immaterial, impertinent, or scandalous," as they must under *Whittlestone*. ECF No. 75 at 6 (quoting *Whittlestone*, 618 F.3d at 973). They further argue that even if the motion were proper, Defendants' arguments fail on the merits because Plaintiffs have alleged a "single defect and single course of conduct [that] is identical for each Plaintiff"—thus

15

1   warranting adjudication by class representation. *Id.* at 6–7.

2   This is not an exceptional case that warrants the class claims being stricken at this stage.

3   As this Court has done in prior cases, it "declines to strike the class allegations here where

4   discovery has not yet commenced and the issues raised by [Defendants] are ones to be addressed

5   at the class certification, not the motion to dismiss, stage." *Gatling-Lee v. Del Monte Foods, Inc.*,

6   No. 22-CV-00892-JST, 2023 WL 11113888, at *14 (N.D. Cal. Mar. 28, 2023), *reconsideration

7   denied sub nom. Nacarino v. Del Monte Foods, Inc.*, No. 22-CV-00892-JST, 2024 WL 847925

8   (N.D. Cal. Feb. 28, 2024); *see also Williams v. Affinity Ins. Servs., Inc.*, No. 23-CV-06347-JST,

9   2024 WL 3153214, at *8 (N.D. Cal. June 24, 2024); *Bui-Ford v. Tesla, Inc.*, No. 4:23-CV-02321,

10  2024 WL 694485, at *8 (N.D. Cal. Feb. 20, 2024); *Dodson v. Tempur-Sealy Int'l, Inc.*, No. 13-

11  CV-04984-JST, 2014 WL 1493676, at *11 (N.D. Cal. Apr. 16, 2014).

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to strike and CooperSurgical's motion to dismiss as directed to Plaintiffs T.U. and V.W.

**IT IS SO ORDERED.**

Dated: December 4, 2024

JON S. TIGAR
United States District Judge