UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.U., et al.,<br>   Plaintiffs,<br> v.<br>CooperSurgical, Inc.,<br>   Defendants.<br><br>CooperSurgical, Inc.,<br>   Third-Party Plaintiff,<br> v.<br>Embryotech Laboratories Inc. and Hamilton Thorne Ltd.,<br>   Third-Party Defendants. | Case No. 24-cv-01261-JST<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>Re: ECF Nos. 139, 140 |

  Before the Court are Third-Party Defendants Embryotech Laboratories Inc.'s ("Embryotech") and Hamilton Thorne Ltd.'s ("Hamilton Thorne") (together, "Third-Party Defendants") motions to dismiss. ECF Nos. 139, 140. The Court will grant the motions.

**I. BACKGROUND**

  Because the facts of the original action in this case are well-known to the parties and the Court has summarized the background of this action in detail in its prior order, ECF No. 94, the Court will not repeat them here in full. In sum, this underlying action was brought by two sets of couples on March 1, 2024, against Defendant CooperSurgical for its alleged use of defective embryo culture media to support Plaintiffs' embryos in in vitro fertilization ("IVF"). ECF No. 53 ¶¶ 2, 4–5, 64–73. Plaintiffs asserted claims for strict products liability, negligent failure to recall,

negligence or gross negligence, trespass to chattels, and unjust enrichment on behalf of themselves and a proposed class of "[a]ll individuals in the United States whose eggs and/or embryos were exposed to Recalled Lots of Defendants' Global Media product (Global Media Lots number 231020-018741, 231020-018742, and 231020- 018743)." *Id.* ¶ 74; *id.* at 17–24.

On March 13, 2025, CooperSurgical filed a third-party complaint against the Third-Party Defendants. ECF No. 127. CooperSurgical alleges that it contracted with Embryotech for Embryotech to perform pre-distribution quality assurance tests on the embryo culture media that is the subject of Plaintiffs' claims against CooperSurgical. *Id.* ¶ 7. Embryotech is a laboratory that provides quality control services to the assisted reproductive technologies industry. *Id.* ¶ 15. CooperSurgical alleges that although Hamilton Thorne is formally the parent company of Embryotech, Embryotech operates as the alter ego of Hamilton Thorne, and so Hamilton Thorne is also directly bound by the agreements between CooperSurgical and Embryotech. *Id.* ¶¶ 17–31.

CooperSurgical alleges that the Third-Party Defendants improperly tested three lots of embryo culture media at issue and represented that those lots had "passed" the relevant testing when the lots actually did not meet specification and were not suitable for use in IVF clinics. *Id.* ¶ 50. Allegedly relying on the Third-Party Defendants' issuance of "Pass" Certificates of Analysis for the embryo culture media lots at issue, CooperSurgical released, and was subsequently forced to recall, the lots. *Id.* ¶ 68. According to CooperSurgical, this recall gave rise to Plaintiffs' allegations against them in the present action. *Id.* CooperSurgical thus alleges that Plaintiffs' claims, if proven, arise solely from the negligent and/or unlawful conduct of the Third-Party Defendants. *Id.* ¶ 3. CooperSurgical asserts a claim against the Third-Party Defendants for equitable indemnity as to any and all liability incurred as a result of this litigation.

Hamilton Thorne is a Canadian company headquartered in Massachusetts. *Id.* ¶ 6. Embryotech is a subsidiary of Hamilton Thorne and is a Delaware company headquartered in Massachusetts. *Id.* ¶ 5.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), the court must dismiss an action when it does not have personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). "In opposition to

2

a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where "the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true. Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* (internal quotation marks and citations omitted).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Id.* Because the applicable state "statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 800–01.

Due process permits a court to exercise personal jurisdiction over a defendant only when "the defendant has sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th Cir. 2023) (internal quotation marks and citation omitted)). "The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).

"A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017) (emphasis omitted). General jurisdiction over a corporation is appropriate only when the corporation's contacts with the forum state "are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG*, 571 U.S. at 127 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919

3

(2011)). "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[matic] . . . bases for general jurisdiction.'" *Id.* at 137 (quoting *Goodyear*, 564 U.S. at 924). If a business is not incorporated in, and does not have its principal place of business in a forum state, "[o]nly in an 'exceptional case' will general jurisdiction be available anywhere else." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (quoting *Daimler AG*, 571 U.S. at 139 n.19).

"Specific jurisdiction is very different." *Bristol-Myers*, 582 U.S. at 262. For the court to exercise specific jurisdiction, the lawsuit must arise out of or relate to the defendant's contacts with the forum. *Id.* "In other words, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum state and is therefore subject to the state's regulation." *Id.* (quoting *Goodyear*, 564 U.S. at 919).

Because California's long-arm jurisdictional statute authorizes jurisdiction to the fullest extent permitted by the Constitution, *see* Cal. Code Civ. P. § 410.10, the central question is whether the defendant has "at least 'minimum contacts' with [California] such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)).

The Ninth Circuit has established a three-part inquiry, referred to as the minimum contacts test, to determine whether a court has specific personal jurisdiction over a defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Id.* at 802. "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* If the plaintiff does so, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*,

4

471 U.S. 462, 476–78 (1985)).

## III.  REQUEST FOR JUDICIAL NOTICE

"Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute,'" i.e., the fact "is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). "Unlike rule-established judicial notice, incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Id.* at 1002. Documents "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim," *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), and "the documents' authenticity . . . is not contested," *Lee*, 250 F.3d at 688 (alteration in original) (quotation marks and citation omitted). "[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

CooperSurgical, Hamilton Thorne, and Embryotech each filed its own request for judicial notice.  ECF Nos. 139-1; 140-1; 145.

### A.  The Third-Party Defendants

The Third-Party Defendants request that this Court take judicial notice of or find incorporated by reference five documents: (1) a copy of the search results for "Hamilton Thorne" from the California Secretary of State Business Search, available at https://bizfileonline.sos.ca.gov/search/business, conducted on May 19, 2025. 2; (2) a copy of the search results for "Embryotech Laboratories" from the California Secretary of State Business Search, available at https://bizfileonline.sos.ca.gov/search/business, conducted on May 19, 2025; (3) a copy of the Quality Agreement Between Embryotech Laboratories Inc. and CooperSurgical Inc. and its Affiliates, dated January 31, 2023; (4) a copy of the "Response of Interested Parties The Cooper Companies, Inc., and CooperSurgical, Inc., in Opposition to Plaintiffs A.B., C.D., F.G., and H.I.'S Motion to Transfer and Centralize Related Actions for Coordinated or Consolidated Pretrial Proceedings," Doc. 15, In Re: The Cooper Companies, Inc., In Vitro

5

1  Fertilization Global Culture Media Products Liability Litigation, MDL No. 3122 (United States
2  Judicial Panel on Multidistrict Litigation, July 23, 2024); and (5) a copy of CooperSurgical's
3  Second Amended Complaint, *CooperSurgical, Inc. v. Embryotech Laboratories Inc., et al.*, Civil
4  Action No. 2477CV00805 (Essex, Mass. Super. Ct., Apr. 8, 2025).) ECF No. 139-1; ECF No.
5  140-1.

6  First, the Court takes judicial notice of the search results from the California Secretary of State Business Search as records from a government website. *See Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 978 n.2 (9th Cir. 2007) (explaining that a court may take judicial notice of a government publication). Second, the Court finds that the Quality Agreement between Embryotech and CooperSurgical is properly incorporated by notice—as it is the contract giving rise to the relationship and conduct at issue in the third-party complaint filed by CooperSurgical. Third, the Court takes judicial notice of the existence of the remaining court documents. *See Salas v. Gomez*, No. 14-CV-01676-JST, 2016 WL 3971206, at *5 (N.D. Cal. July 25, 2016); *see also In re Bare Escentuals, Inc. Sec. Lit.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010) (explaining that the court "may take judicial notice of the existence of unrelated court documents . . . it will not take judicial notice of such documents for the truth of the matter asserted therein").

### B.     CooperSurgical

CooperSurgical requests that the Court take judicial notice of three documents: (1) a copy of an archived article from the Centers for Disease Control and Prevention's ("CDC") website, entitled "State-Specific Assisted Reproductive Technology Surveillance;" (2) a copy of Embryotech Laboratories, Inc.'s posts, on its own website and on Instagram, LinkedIn, and Facebook, advertising Embryotech's participation in the Pacific Coast Reproductive Society Conference; and (3) a copy of Hamilton Thorne's website listing "Direct Regional Sales" contacts. ECF No. 145.

First, the Court agrees that it may take judicial notice of the CDC article because it is a record from a government website whose accuracy cannot reasonably be questioned. *See Corrie*, 503 F.3d at 978 n.2.

As for CooperSurgical's second and third categories of requests, "this Court rejects the

notion that a document is judicially noticeable simply because it appears on a publicly available website, regardless of who maintains the website or the purpose of the document." *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1032 (N.D. Cal. 2018). Unlike government websites, the websites of private parties "are not inherently reliable," and that "is particularly so when a party seeks to introduce documents it created and posted on its own website, as [CooperSurgical] does here. When a non-governmental entity to seek judicial notice of its paper records, the request is properly rejected because such documents are subject to reasonable dispute." *Id.* at 1032–33 (citing *Ladore v. Sony Comput. Entm't Am., LLC*, 75 F.Supp.3d 1065, 1074 (N.D. Cal. 2014)). However, because the Third-Party Defendants do not appear to contest the authenticity of these documents, the Court will take judicial notice of the existence of these documents for the purpose of deciding the motions at issue.

## IV.   DISCUSSION

The first prong of the minimum contact test to determine whether a court may exercise specific personal jurisdiction is often called the "purposeful availment" prong. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). The phrase "purposeful availment," however, is often used "in shorthand fashion, to include both purposeful availment and purposeful direction." *Schwarzenegger*, 374 F.3d at 802. "A purposeful availment analysis is most often used in suits sounding in contract." *Id.* (citation omitted). "A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Id.* (citation omitted).

Because CooperSurgical's claim for equitable indemnification arises out of its contractual relationship with the Third-Party Defendants—specifically out of allegations that the Third-Party Defendants improperly performed their contractual duties to test the lots of embryo culture media at issue—the Court applies a purposeful availment analysis. *See Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (applying the purposeful availment test where although the plaintiff's legal malpractice claims "sound in tort, all arise out of [the plaintiff's] contractual relationship with the defendants"); *see also Wickline v. United Micronesia Dev. Ass'n, Inc.*, No. C 14-00192 SI, 2014 WL 2938713, at *5 (N.D. Cal. June 30, 2014) ("In several decisions, the Ninth Circuit has applied

the purposeful availment test to suits that involve both contract and tort claims where the tort claims arise out of the plaintiff's contractual relationship with the defendant.") (collecting cases).

CooperSurgical argues that the Third-Party Defendants have purposefully availed themselves of the privilege of doing business in California and purposefully directed activities toward California under a stream of commerce theory. Specifically, CooperSurgical primarily contends that the Third-Party Defendants "participate[d] in the chain of distribution" by "[t]esting to ensure that" the embryo culture media conformed with manufacturing specifications—a vital part of the manufacturing process. ECF No. 144 at 12. And the Third-Party Defendants "knew or should have known that the embryo culture media for which they were responsible for performing pre-distribution quality assurance tests would ultimately be distributed to IVF clinics across the country, including clinics in California [because] California is one of the largest IVF markets in the country." *Id.* at 13. CooperSurgical further adds that "Embryotech and Hamilton Thorne's contacts with California provide the 'plus' needed to satisfy the stream of commerce plus test," citing Embryotech's attendance of the "Pacific Coast Reproductive Society's Annual Conference in at least 2022, 2024, and 2025" and advertising related to those conferences, as well as the fact that Hamilton Thorne "has a direct sales team for the California market." *Id.* at 13–14.

The Court finds that CooperSurgical has not met its burden to show minimum contacts. First, CooperSurgical's only allegations against Embryotech are that Embryotech participated in the chain of distribution of the recalled lots by testing to ensure that the lots conformed with specifications. ECF No. 144 at 12. As the Third-Party Defendants assert, and CooperSurgical does not dispute, the 2023 agreement between Embryotech and CooperSurgical was "negotiated, executed, performed, and allegedly breached completely outside of California." *See* ECF No. 140 at 17; ECF No. 144 at 15. "Embryotech conducted testing on CooperSurgical's culture media samples at Embryotech's Haverhill, Massachusetts facility." ECF No. 140 at 17. And the agreement between Embryotech and CooperSurgical did not contain any choice of law provision incorporating or otherwise applying California law. *See generally* ECF No. 140-2. Thus, nothing about the contract between Embryotech and CooperSurgical or their actual course of dealing suggests that the Third-Party Defendants purposefully availed themselves of the privilege of doing

8

business in California. *See Burger King Corp.*, 471 U.S. at 479.

Second, CooperSurgical has not adequately shown that the stream of commerce theory of personal jurisdiction even applies under the facts alleged here—where the Third-Party Defendants did not actually design, manufacture, or place any goods in the stream of commerce for purchase or use by California consumers. While CooperSurgical cites to cases applying the stream of commerce test to *manufacturers* of component parts, *see* ECF No. 144 at 11, it has not provided any authority applying the same logic to third-party product *testers* who have no other involvement in the manufacturing of the product.[1] And several courts have held otherwise—finding a lack of personal jurisdiction where a testing company "does not place product into the stream of commerce" and instead only "conduct[s] the testing requested by [manufacturer]," "report[s] the results of the testing to [manufacturer]," and then "ha[s] no further involvement with the product." *See Netolicky v. McKeon Products, Inc.*, No. 1:12-CV-01429-SEB-DKL, 2013 WL 12303134, at *3 (S.D. Ind. May 21, 2013); *see also, e.g.*, *Doan v. Consumer Testing Laboratories (Far East) Ltd.*, 105 F.3d 654, 1996 WL 762865, at *3 (5th Cir. 1996) (finding no personal jurisdiction over defendants that provided pre-market quality testing services to Wal-Mart because "[a]lthough the testing results issued by the [testing companies] with respect to a particular product may in fact influence Wal-Mart's decision to place a product into the stream of commerce, the [testing companies] themselves do not purposefully direct their activities toward Louisiana sufficiently to confer specific personal jurisdiction upon Louisiana courts"); *Angel's Dream, LLC v. Toledo Jet Ctr., LLC*, 721 F. Supp. 3d 601, 614-15 (N.D. Ohio 2024) (finding no personal jurisdiction over aircraft inspection services provider for services that were provided outside of the forum state because services do "not travel, as does a product").

Third, a "defendant's transitory presence [in the forum state] will support jurisdiction only if it was meaningful enough to 'create a "substantial connection" with the forum State.'" *Picot v.*

---

[1] Indeed, one of the cases cited by CooperSurgical which found the existence of personal jurisdiction over a defendant that controlled the design and testing phases of manufacturing explicitly distinguished the facts at hand from "a case where a wholly independent designer sells a product design to another company and is completely uninvolved in the production of the physical product thereafter." *Falco v. Nissan N. Am. Inc.*, 96 F. Supp. 3d 1053, 1058–59 (C.D. Cal. 2015).

9

*Weston*, 780 F.3d 1206, 1213 (9th Cir. 2015) (quoting *Burger King,* 471 U.S. at 475). So even if the Court considers the social media posts attached to CooperSurgical's request for judicial notice, Embryotech did not engage in significant activities in California merely by attending an industry conference—the location of which Embryotech had no influence over—held in the state three times in four years. *See SDS Korea Co., Ltd. v. SDS USA, Inc.*, 732 F. Supp. 2d 1062, 1079–80 (S.D. Cal. 2010) (finding the defendant's presence at a California trade show insufficient to demonstrate purposeful activity where the defendant had no choice in the location and there was no evidence that the defendant sold any products or otherwise contracted with California customers at the trade show). Moreover, CooperSurgical has not demonstrated that its claims arise out of or relate to Embryotech's attendance at the conference. CooperSurgical does not allege that its agreement with Embryotech or Embryotech's alleged improper testing resulted from Embryotech's attendance at or advertising about the conferences. *See id.* (finding a lack of personal jurisdiction where "Plaintiff does not assert any of its alleged injuries resulted from SDS USA's participation in the Long Beach trade show"). The same is true for CooperSurgical's allegations that Hamilton Thorne has a sales team in California, as Hamilton Thorne is merely the parent company to Embryotech, and CooperSurgical has not explained how its sales presence in California has any relation to *Embryotech's* testing services at issue here.[2]

As for CooperSurgical's arguments about the foreseeability of its embryo culture media ending up in California, it is hornbook law that

> [t]he placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). Even a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state. *Id.*

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007).

As discussed above, CooperSurgical has not shown the "more" that is required to exercise

---

[2] The Court also notes that, as the Third-Party Defendants point out, it appears that it is Hamilton Thorne *Inc.* and not Hamilton Thorne *Ltd.* that maintains a sales team in California. *See* ECF No. 147 at 14.

10

personal jurisdiction. Accordingly, CooperSurgical has not alleged sufficient facts to constitute purposeful activity by the Third-Party Defendants in California. *See Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1995 (9th Cir. 1988) ("Purposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff."); *see also Burger King*, 471 U.S. at 475 ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, ... or of the unilateral activity of another party or a third person"); *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989) ("a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person.").

Finally, CooperSurgical also requests an opportunity to conduct jurisdictional discovery. "In this district, courts have held that 'a plaintiff need not make out a prima facie case of personal jurisdiction before it can obtain jurisdictional discovery.'" *Hernandez v. Mimi's Rock Corp.*, 632 F. Supp. 3d 1052, 1062 (N.D. Cal. 2022) (quoting *Calix Networks, Inc. v. Wi–Lan, Inc.*, No. 09-cv-06038-CRB (DMR), 2010 WL 3515759, at *4 (N.D. Cal. Sept. 8, 2010)). "A plaintiff must merely present a "colorable basis" for jurisdiction, or some evidence constituting a lesser showing than a prima facie case." *Id.* (citation and quotation omitted). However, "the Court need not permit such discovery" if "a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (quoting *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995)). Here, the Court concludes that CooperSurgical has not shown a "colorable basis" for the exercise of jurisdiction and therefore denies its request for jurisdictional discovery.[3]

## CONCLUSION

For the foregoing reasons, the Court grants the Third-Party Defendants' motions to dismiss and denies CooperSurgical's request to conduct jurisdictional discovery. Although it seems

---

[3] Because the Court finds that CooperSurgical has not carried its burden of establishing minimum contacts, it does not reach the Third-Party Defendants' remaining arguments.

11

unlikely that CooperSurgical will be able to amend the complaint to allege sufficient facts to confer personal jurisdiction over the Third-Party Defendants, the Court will grant such leave out of an abundance of caution. Leave to amend is granted solely to add new jurisdictional allegations. Any amended complaint shall be filed within 21 days of the date of this order.

**IT IS SO ORDERED.**

Dated: November 13, 2025

_____
JON S. TIGAR
United States District Judge